**CENTURY WRECKER CORPORATION,**
Plaintiff,

v.

**E.R. BUSKE MANUFACTURING COMPANY, INC., E.R. Buske Distributing Company, and E.R. Buske, Defendants.**

**No. C 95–4050.**

United States District Court,
N.D. Iowa,
Western Division.

Jan. 9, 1996.

Edmund J. Sease, Daniel J. Cosgrove, and Jeffrey D. Harty of Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa, and by Vice President and General Counsel for Century Wrecker Corp., Frank Madonia, for Plaintiff Century Wrecker Corp.

David A. Tank and Kent A. Herink of Davis, Brown, Kohen, Shors & Roberts, P.C., Des Moines, Iowa, for Defendants E.R. Buske Manufacturing Co., E.R. Buske Distributing Co., and E.R. Buske.

**MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' POST–TRIAL MOTIONS; ORDER GRANTING PERMANENT INJUNCTION; AND ORDER FOR ENTRY OF JUDGMENT**

## TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1264

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1265
 A. Defendants' Post–Trial Motions Pursuant to Fed.R.Civ.P. 50 & 59 . . . . . . . . . . 1265
 1. Applicable Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1265
 a. Standards for judgment as a matter of law . . . . . . . . . . . . . . . . . . . . . 1267
 b. Standards for a new trial or alteration of judgment . . . . . . . . . . . . . . . . 1268
 c. Disposition of alternative motions under Rule 50(b) . . . . . . . . . . . . . . . 1269
 2. Disposition of Buske's motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1270
 a. Willful infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1270
 i. Definition of willfulness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1271
 ii. Evidence in the record of willfulness . . . . . . . . . . . . . . . . . . . . . . . 1272
 b. Inducement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1274

 c. Calculation of damages .........................................1275 
 d. Summary of disposition of Buske's post-trial motions ..............1277 
 B. Plaintiff's Motion For Entry Of Judgment, Including Prejudgment Interest .........................................................................1277 
 1. Historical background and case law regarding prejudgment interest....1277 
 2. Century Wrecker's claim of prejudgment interest .....................1281 
 a. Imposition of prejudgment interest...............................1282 
 b. Rate of prejudgment interest ....................................1282 
 c. Postjudgment interest ...........................................1283 
 C. Enhanced Damages ...............................................1283 
 1. Applicable law...................................................1283 
 2. Century Wrecker's argument for enhanced damages ...................1286 
 a. Deliberate copying of Century Wrecker's product .................1286 
 b. Failure to investigate scope of patents ..........................1287 
 c. Buske's behavior as a party to litigation .........................1288 
 d. Buske's size and financial condition..............................1288 
 e. Closeness of the case ...........................................1288 
 f. Duration of Buske's misconduct..................................1289 
 g. Remedial action taken by Buske ................................1290 
 h. Buske's motivation for harm .....................................1290 
 3. Court's consideration of the totality of the circumstances...............1290 
 D. Attorney Fees and Costs ..........................................1291 
 1. Applicable law...................................................1292 
 2. Entitlement to attorney fees and costs................................1293 
 E. Permanent Injunction In Accordance With Verdict ........................1293 

III. CONCLUSION ...................................................1295 

---

BENNETT, District Judge.

This post-trial opinion follows a jury verdict for the Plaintiff in this patent infringement litigation between competing industry titans in the tow truck and wrecker recovery equipment manufacturing business. Similar to the wrecker recovery industry itself, where often the work begins only after the dust settles, the jury's verdict here, reached after eight days of trial, has generated a plethora of post-trial motions filed by each of the parties. These motions raise several nettlesome issues for the court to resolve. The court is mindful that the patent system is based on the United States Constitution and, therefore, is concerned that resolution of these post-trial issues in this case serve "to promote the Progress of Science and useful Arts." U.S. CONST., art. I, § 8, cl. 8.[1]

These concerns are raised here by post-trial motions of both parties. Plaintiff has moved for the entry of judgment, including an award of prejudgment and postjudgment interest, a discretionary award from the court of treble enhanced damages, attorney fees, and costs, and an injunction precluding further infringement. Defendants have resisted these motions and have, for their part, renewed their motion for judgment as a matter of law, or, in the alternative, motion for new trial or alteration of judgment. Defendants' motions seek to overturn the jury's findings of willfulness of infringement and Defendant Earl Buske's personal liability arising from his inducement of infringement. Defendants' post-trial motions also vigorously attack the jury's award of more than one million dollars in damages. In light of the jury's categorical rejection of the entire market value rule, Defendants argue the Plaintiff failed to establish damages based on an alternate reasonable royalty theory.

1. The full text of Art. I., § 8, cl. 8 of the United States Constitution provides as follows: 
 [t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries[.] 
 U.S. CONST., Art. I, § 8, cl. 8.

## I. BACKGROUND

In its original complaint, plaintiff Century Wrecker Corporation ("Century Wrecker") alleged defendants E.R. Buske Manufacturing Company, E.R. Buske Distributing Company, and E.R. Buske individually ("Buske") had violated federal patent laws by infringing two patents owned by Century Wrecker.[2] Many of the claims and issues in this lawsuit were disposed of in a partial grant of summary judgment in favor of Century Wrecker by the court on March 15, 1995, and in a jury trial that began on October 4, 1995. However, several issues remain to be resolved in this ruling on various post-trial motions.

On March 15, 1995, the court granted in part and denied in part Century Wrecker's September 2, 1994, motion for summary judgment. The court held that Buske had infringed both the '737 "L-arm patent" and the '978 "underlift" patent and that the '978 patent was sufficiently "enabling" to meet the requirements of 35 U.S.C. § 112. However, the court held that there were genuine issues of material fact precluding summary judgment in Century Wrecker's favor on the "obviousness" of both the '737 patent and the '978 patent under 35 U.S.C. § 103 and the issue of whether the '737 patent had been "anticipated" under 35 U.S.C. § 102(a).

This matter therefore proceeded to jury trial beginning on October 4, 1995. At the conclusion of Century Wrecker's evidence, Buske moved for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b), and renewed this motion at the conclusion of its own evidence. The court denied Buske's motion for judgment as a matter of law on each and every ground. On October 18, 1995, the jury returned a verdict in favor of Century Wrecker. Specifically, the jury found that Earl Buske was guilty of inducing infringement of the patents-in-suit, that each defendant had committed willful infringement, that the patents-in-suit were not invalid, and that actual damages in the case should be awarded in the amount of $1,088,457.

Following the trial, on October 26, 1995, Century Wrecker filed a motion for the entry of judgment, including pre-judgment interest, and a motion for an injunction which would prohibit Buske or those in active concert with Buske from infringement of claims 1–3, 8, and 10–14 of the '737 patent and claims 1–3 and 8 of the '978 patent. Century Wrecker further cited specific models which would be covered by the injunction, including the Bodyguard, MD–730, MD–1030, MD–1280, and LD–5000. Also, on October 26, 1995, Century Wrecker filed a motion for enhanced damages pursuant to 35 U.S.C. § 284, based on the jury's finding of "willfulness" of the infringement, and for attorney fees and costs pursuant to 35 U.S.C. § 285, asserting that this is an "exceptional case."

On November 3, 1995, Buske resisted Century Wrecker's motion for entry of judgment, the application of pre-judgment interest, and the entry of injunction. That same date, Buske also resisted Century Wrecker's motion for increased damages, costs, and attorney fees. In addition to its resistances to Century Wrecker's post-trial motions, on October 27, 1995, Buske renewed its own post-trial motion for judgment as a matter of law or, in the alternative, moved for a new trial or for amendment of judgment. Century Wrecker resisted Buske's post-trial motion on November 7, 1995. On November 14, 1995, Century Wrecker filed reply briefs in further support of its post-trial motions. On December 7, 1995, Buske filed a motion seeking leave to supplement its brief in support of its renewed motion for judgment as a matter of law. On December 14, 1995, the court granted Buske's motion to file the supplemental brief.

The court heard oral arguments on the parties' post-trial motions on December 14, 1995. At the oral arguments, Century Wrecker was represented by Edmund J. Sease, Daniel J. Cosgrove, and Jeffrey D. Harty of Zarley, McKee, Thomte, Voorhees & Sease in Des Moines, Iowa. Also present at the hearing was Frank Madonia, Vice President and General Counsel for Century Wrecker. Buske was represented by David A. Tank and Kent A. Herink of Davis,

2. The patents in suit are U.S. Patent No. 4,679,-978, which may be called "the underlift patent" or "the '978 patent," and U.S. Patent No. 4,836,-737, which may be called "the L-arm patent" or "the '737 patent."

Brown, Koehn, Shors & Roberts, P.C. in Des Moines, Iowa. Century Wrecker filed a brief in response to Buske's supplemental brief of authorities on December 21, 1995. Buske filed a motion for leave to respond to Century Wrecker's brief in light of a new citation on December 26, 1995. On December 28, 1995, the court granted that motion, and Buske subsequently filed a response to Century Wrecker's resistance on January 2, 1996. With this extensive procedural background in mind, the court turns first to consideration of Buske's renewed motion for judgment as a matter of law or, in the alternative, motion for a new trial or amendment of judgment. If this motion is granted in whole or in part, it may obviate the need for the court to reach some or all of the numerous issues raised in Century Wrecker's post-trial motions.

## II. LEGAL ANALYSIS

### A. Defendants' Post–Trial Motions Pursuant to Fed.R.Civ.P. 50 & 59

Buske has made post-trial motions pursuant to both *Fed.R.Civ.P.* 50 and *Fed.R.Civ.P.* 59. Before proceeding to the disposition of these motions, the court will first examine with some care the standards for disposition of Buske's post-trial motions.

#### 1. Applicable Standards

Federal Rule of Civil Procedure 50 provides for alternative post-trial motions for judgment as a matter of law or new trial, in relevant part, as follows:

(a) JUDGMENT AS A MATTER OF LAW.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on

that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

(b) RENEWAL OF MOTION FOR JUDGMENT AFTER TRIAL; ALTERNATIVE MOTION FOR NEW TRIAL. Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative....

*Fed.R.Civ.P.* 50(a) & (b).[3]

 Under *Fed.R.Civ.P.* 50(b), a litigant's post-trial motion for judgment as a matter of law on any claim may not be entertained unless the movant previously moved for judgment as a matter of law on that claim at the close of all evidence pursuant to *Fed.R.Civ.P.* 50(a). *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 197 (8th Cir.1995) (post-trial motion for judgment as a matter of law may not advance additional grounds not raised in pre-

---

3. While Rule 50 was amended effective December 1, 1993, the amendment was technical in nature. "[P]rior to 1991 amendments made to the Federal Rules of Civil Procedure, a Rule 50 motion was a motion for directed verdict or motion for judgment notwithstanding the verdict. The 1991 amendments merely changed the names of these motions, but the standard for application of this rule remains the same." *Jackson v. Swift–Eckrich, Inc.*, 836 F.Supp. 1447, 1449 (W.D.Ark.1993). The Committee Notes to Rule 50 indicate:

This technical amendment corrects an ambiguity in the text of the 1991 revision of the rule, which, as indicated in the Notes, was not intended to change the existing standards under which "directed verdicts" could be granted. This amendment makes clear that judgments as a matter of law in jury trials may be entered against both plaintiffs and defendants and with respect to issues or defenses that may not be wholly dispositive of a claim or defense.

*Fed.R.Civ.P.* 50 advisory committee's note.

verdict motion); *Smith v. Ferrel,* 852 F.2d 1074, 1075 (8th Cir.1988) (record disclosed that no motion for "directed verdict" had been made at the close of all evidence, "appellant therefore cannot question the sufficiency of the evidence either before the district court through a motion for judgment notwithstanding the verdict or on appeal."); *Hubbard v. White,* 755 F.2d 692, 695 (8th Cir.) (motion for "directed verdict" at the close of evidence was an "essential condition precedent" to a motion for "judgment notwithstanding the verdict," and where no such motion was made at the close of evidence, the j.n.o.v. motion was barred), *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985); *Myers v. Norfolk Livestock Mkt., Inc.,* 696 F.2d 555, 558 (8th Cir.1982); *see also Redd v. City of Phenix City, Ala.,* 934 F.2d 1211, 1214 (11th Cir.1991); *Yohannon v. Keene Corp.,* 924 F.2d 1255, 1261 (3d Cir.1991).[4] The motion for judgment as a matter of law at the close of the evidence must assert each of the grounds subsequently relied upon in the post-trial motion for judgment as a matter of law. *Midamar Corp. v. National–Ben Franklin Ins. Co.,* 898 F.2d 1333, 1337 (8th Cir.1990); *Lowe v. Conlee,* 742 F.2d 1140, 1141 (8th Cir.1984); *see also Purcell v. Seguin State Bank & Trust Co.,* 999 F.2d 950, 956 (5th Cir.1993); *McCann v. Texas City Refining, Inc.,* 984 F.2d 667, 671 (5th Cir. 1993). Thus, a party who either fails to move for judgment as a matter of law on any claim at the conclusion of the evidence or fails to renew at that time a motion for judgment as a matter of law made earlier than the close of the evidence has waived a post-trial motion for judgment as a matter of law pursuant to Rule 50(b), and instead must seek relief in a motion for new trial pursuant to *Fed.R.Civ.P.* 59. *Myers,* 696 F.2d at 558; *see also Purcell,* 999 F.2d at 956 (failure to renew motion waives right to file a post-

verdict motion for judgment); *McCann,* 984 F.2d at 672 (motion for judgment as a matter of law made earlier than the close of evidence, but not renewed at the close of all evidence, "cannot serve as a predicate for a motion for judgment notwithstanding the verdict."); *Yohannon,* 924 F.2d at 1261 (party foreclosed from pursuing a motion for judgment notwithstanding the verdict for this reason is limited at the time of post-trial motions to a motion for new trial); *Riverview Inv., Inc. v. Ottawa Community Improvement Corp.,* 899 F.2d 474, 477 (6th Cir.) ("party seeking a judgment n.o.v. must, as a prerequisite, move for a directed verdict at the close of all the evidence or renew such motion if made prior to the close of all the evidence."), *cert. denied,* 498 U.S. 855, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1330 (6th Cir.1988) (party who fails to renew prior motion waives the original motion and is precluded from questioning the sufficiency of the evidence on appeal). Buske made a motion for judgment as a matter of law both at the conclusion of Century Wrecker's evidence and at the conclusion of its own case. Therefore, Buske has not waived a post-trial motion for judgment as a matter of law pursuant to Rule 50(b),

Federal Rule of Civil Procedure 59, entitled "New Trials; Amendment of Judgments," states in relevant part:

(a) GROUNDS. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. . . .

*Fed.R.Civ.P.* 59(a).

Because there has been some confusion in the district courts in this circuit,[5] and be-

---

4. The advisory note to the 1963 amendment to *Fed.R.Civ.P.* 50(b) "unequivocally states a 'motion for a judgment notwithstanding the verdict will not lie unless it was preceded by a motion for directed verdict made at the close of the evidence.'" *Redd v. City of Phenix City, Ala.,* 934 F.2d 1211, 1214 (11th Cir.1991).

5. In *United States v. Schay,* 746 F.Supp. 877, 880 (E.D.Ark.1990), *rev'd sub nom. White v. Pence,* 961 F.2d 776 (8th Cir.1992), the court stated:
[T]his court has, over the last several years, had occasion to consider the standard to be applied in ruling on motions for a new trial several times, and must confess that this court simply does not know with any certainty what standard is to be applied by the trial courts in this circuit. The court respectfully believes

cause there are substantial differences in the standards to be applied under Federal Rules of Civil Procedure 50 and 59, the court will examine the appropriate standard to be applied under each rule.

As the Eighth Circuit Court of Appeals stated in *White v. Pence*, 961 F.2d 776 (8th Cir.1992), "it is evident that the standards for considering a motion for j.n.o.v. [now a motion for judgment as a matter of law] differ thoroughly from those governing consideration of a motion for new trial." *Pence*, 961 F.2d at 779; *see also Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 800 (8th Cir. 1994) (also distinguishing between the standards for judgment as a matter of law and for a new trial, citing *Pence*); *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1266 (8th Cir.1994) (standards for resolving motions under the two rules differ; therefore, review of evidence under one rule cannot properly sustain decision under other rule), *cert. denied,* —— U.S. ——, 115 S.Ct. 1251, 131 L.Ed.2d 133 (1995). The court in *Pence* therefore carefully delineated the difference between the appropriate standards for these two motions. *Id.* This court will do likewise, taking *Pence* as its guide.

### a. Standards for judgment as a matter of law

In determining a motion for j.n.o.v. (and in the current parlance of Federal Rule of Civil Procedure 50, a motion for "judgment as a matter of law"), the court in *Pence* observed that

the question is a legal one, whether there is sufficient evidence to support a jury verdict. This court must analyze the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility. *See Dace v. ACF Indus., Inc.*, 722 F.2d 374, 375–76 (8th Cir.1983), *supplemented,* 728 F.2d 976 (1984). We have also stated that to sustain a motion for j.n.o.v., all the evidence

must point one way and be susceptible of no reasonable inference sustaining the position of the nonmoving party. *Id.* at 375; *Washburn v. Kansas City Life Ins. Co.*, 831 F.2d 1404, 1407 (8th Cir.1987); *Brown [v. Syntex Lab., Inc.]*, 755 F.2d [668,] 671 [ (8th Cir.1985) ]. These principles have no application to the consideration of a motion for new trial on the ground that the verdict is against the weight of the evidence.

*Pence*, 961 F.2d at 779 (footnotes omitted); *see also Nelson*, 26 F.3d at 800 (citing these standards from *Pence* ); *First Dakota Nat'l Bank v. Saint Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 808–09 (8th Cir.1993). Thus, this standard requires the district court to:

"consider the evidence in the light most favorable to the prevailing party, assume that the jury resolved all conflicts of evidence in favor of that party, assume as true all facts which the prevailing party's evidence tended to prove, give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts, and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the evidence."

*Minneapolis Community Dev. Agency v. Lake Calhoun Assoc.*, 928 F.2d 299, 301 (8th Cir.1991) (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 989 (8th Cir. 1989)); *see also Nelson*, 26 F.3d at 800 (reiterating these factors, citing *Pence*, 961 F.2d at 779); *McAnally v. Gildersleeve*, 16 F.3d 1493, 1500 (8th Cir.1994) (same).

■ This standard for consideration of a motion for judgment as a matter of law accords the jury's verdict substantial deference. *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995); *McAnally*, 16 F.3d at 1500. However, even with this deference to the jury's

that this confusion is occasioned by changing and shifting language contained in various opinions of the Court of Appeals for this circuit.

This confusion has apparently been alleviated by the court's decision in *White v. Pence*, 961 F.2d 776 (8th Cir.1992). "As to the standard to be

applied in considering motions for a new trial, at least in this court's view, the 'law' in the Eighth Circuit before this court's decision in *White v. Pence*, 961 F.2d 776 (8th Cir.1992) had been cloudy, if not opaque." *Jackson v. Swift–Eckrich, Inc.*, 836 F.Supp. 1447, 1450 (W.D.Ark.1993), *aff'd,* 53 F.3d 1452 (8th Cir.1995).

verdict, the jury cannot be accorded "the benefit of unreasonable inferences, or those 'at war with the undisputed facts,'" *McAnally*, 16 F.3d at 1500 (quoting *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 651 (8th Cir.1989), in turn, quoting *Marcoux v. Van Wyk*, 572 F.2d 651, 653 (8th Cir.), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978)), but the court must still defer to the jury's resolution of conflicting testimony. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979).

### b. Standards for a new trial or alteration of judgment

■ In contrast, concerning motions for new trial under Federal Rule of Civil Procedure 59, the court in *Pence* observed:

> With respect to motions for new trial on the question of whether the verdict is against the weight of the evidence, we have stated: "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain a verdict.'" *Ryan v. McDonough Power Equip.*, 734 F.2d 385, 387 (8th Cir. 1984) (citation omitted). Similar language appears in *Brown*, 755 F.2d at 671–73; *Slatton [v. Martin K. Eby Constr. Co.]*, 506 F.2d [505,] 508 n. 4 [ (8th Cir.1974), *cert. denied*, 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975) ]; *Bates [v. Hensley]*,

414 F.2d [1006,] 1011 [ (8th Cir.1969) ], and early authority cited in *Bates. See also Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1266 (8th Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). These cases establish the fundamental procedures or methodology to be applied by the district court in considering new trial motions and are in contrast to those procedures governing motions for j.n.o.v.

*Id.* at 780. Thus, the court in *Pence* concluded the district court may grant a new trial on the basis that the verdict is against the weight of the evidence, if the first trial results in a miscarriage of justice. *Id.; see also Shaffer v. Wilkes*, 65 F.3d 115, 117 (8th Cir.1995) (citing *Pence* for this standard); *Rush v. Smith*, 45 F.3d 1197, 1203 (8th Cir.) (also citing *Pence* for this standard), *cert. denied*, —— U.S. ——, 116 S.Ct. 409, 133 L.Ed.2d 328 (1995); *Nelson*, 26 F.3d at 800 ("[A] motion for a new trial should be granted if, after weighing the evidence, a district court concludes that the jury's verdict amounts to a miscarriage of justice."); *Jacobs Mfg. Co.*, 19 F.3d at 1266 (correct standard for new trial is conclusion that "the [jury's] verdict was against the 'great weight' of the evidence, so that granting a new trial would prevent a miscarriage of justice.").[6]

■ Although the district court's grant or denial of a motion for new trial is accorded "great deference," and will be reversed "only upon a strong showing of abuse," the district court's discretion "is not boundless." *Shaffer*, 65 F.3d at 118 (citing for the "great

---

6. Rule 59(a) specifically provides for the grant of a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States," *Fed. R.Civ.P.* 59(a), and the court does not mean to suggest that a verdict against the great weight of the evidence is the only ground for a new trial in a civil action. *See, e.g., Silbergleit v. First Interstate Bank of Fargo, N.A.*, 37 F.3d 394, 397 (8th Cir.1994) (new trial may be granted on the basis of a question by counsel that places prejudicial information before the jury, citing *Sanders–El v. Wencewicz*, 987 F.2d 483, 484 (8th Cir.1993), and *McBryde v. Carey Lumber Co.*, 819 F.2d 185, 188 (8th Cir.1987)); *Norton v. Caremark, Inc.*, 20 F.3d 330, 338 (8th Cir.1994) (noting that *Fed. R.Civ.P.* 61 specifically prohibits the grant of a new trial based on errors in admission of evidence, "unless refusal to take such action appears to the court inconsistent with substantial

justice."); *Fink v. Foley–Belsaw Co.*, 983 F.2d 111, 114 (8th Cir.1993) (improper jury instruction or failure to comply with Rule 51 may be ground for new trial, but only if moving party can show material prejudice); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 385 (8th Cir.1992) (misconduct of counsel may be grounds for new trial, but the court must judge whether there has been an effect on the substantive rights of the parties, or whether the misconduct created undue prejudice or passion tainting the proceedings, particularly in light of whether the district court concludes that an effective curative instruction has been given). However, Buske has only moved for a new trial on the ground that the jury's verdict was against the great weight of the evidence. Defendant's Brief in Support of Renewed Motion for Judgment As A Matter Of Law, p. 4.

deference" standard, *Brown v. Syntex Labs., Inc.*, 755 F.2d 668, 673 (8th Cir.1985), and for the standard for reversal, *King v. Davis*, 980 F.2d 1236, 1237 (8th Cir.1992)); *see also Nelson*, 26 F.3d at 800 (review of denial of a motion for new trial is reviewed for abuse of discretion); *TEC Floor Corp. v. Wal–Mart Stores, Inc.*, 4 F.3d 599, 602 (8th Cir.1993) (review is for abuse of discretion); *Fink v. Foley–Belsaw Co.*, 983 F.2d 111, 115 (8th Cir.1993) (grant or denial of new trial on the basis that the verdict is against the great weight of the evidence is " 'virtually unassailable on appeal,' " quoting *Bissett v. Burlington N. R.R. Co.*, 969 F.2d 727, 730 (8th Cir.1992)); *Morgan v. City of Marmaduke*, 958 F.2d 207, 210–11 (8th Cir.1992) (review is for abuse of discretion).

■■■ First, the district court's discretion is bounded in review and reassessment of the evidence:

> [T]he district court cannot simply "reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." [*Pence*, 961 F.2d] at 780, citing, *Fireman's Fund Insurance Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 186 (8th Cir.1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

*Shaffer*, 65 F.3d at 118 (but district court in that case had properly rejected the testimony of one party's witness, and accepted that of a witness for the opposing party, to come to a conclusion contrary to that of the jury concerning which party breached a contract). Hence, "when the evidence is such that reasonable persons could differ as to the result, such as a direct conflict in credible and plausible evidence, the determination is properly left to the jury." *Rush*, 45 F.3d at 1203 (citing *Pence*, 961 F.2d at 781, which in turn cites *Aalco Wrecking Co.*, 466 F.2d at 187). To weigh testimony properly, the court must find testimony supporting the verdict unworthy of belief or find "a significant weight factor" favoring contrary testimony; it may not simply find the testimony supporting the verdict at odds with other evidence, then decide that "a reasonable jury could not fairly conclude" that an element of the plaintiff's

claim has or has not been proved. *Jacobs Mfg. Co.*, 19 F.3d at 1267 (citing *Pence*, 961 F.2d at 781). Rather, the evidence supporting the verdict must be found by the court not to be credible or the court must find that evidence can be "otherwise properly reject[ed]." *Id.*

■■■ The district court's discretion is further bounded by the requirement that it must articulate the reasons for its conclusion that the jury's verdict is against the great weight of the evidence. *Shaffer*, 65 F.3d at 118; *Jacobs Mfg. Co.*, 19 F.3d at 1266 (it is inadequate for court to state "for all of the reasons previously discussed" as ground for granting new trial, particularly if the reasons previously discussed were in relation to a motion for judgment as a matter of law, because standards for resolving the two kinds of motions differ); *Pence*, 961 F.2d at 781; *Washburn v. Kansas City Life Ins. Co.*, 831 F.2d 1404, 1409 (8th Cir.1987). However, the court properly exercises its discretion, for example, when the articulated reasons include the court's conviction that, given the evidence presented at trial, the jury "either did not truly understand what it was necessary for [the plaintiff] to show, or if it did understand, decided to [render a verdict for or against the plaintiff] in spite of the facts and law." *Shaffer*, 65 F.3d at 118 (quoting the district court's conclusion).

### c. Disposition of alternative motions under Rule 50(b)

■■■ As a further matter, *Fed. R.Civ.P.* 50(b), which specifically provides for Buske's filing of an alternative motion for new trial with the renewal of its motion for judgment as a matter of law made during trial pursuant to *Fed.R.Civ.P.* 50(a), also explains how the court is to resolve the alternative motions. The rule provides, in pertinent part, as follows:

> A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. *If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or*

*direct the entry of judgment as a matter of law.*

*Fed.R.Civ.P.* 50(b). In this case, a verdict was indeed returned. As the court reads this rule, the court's ultimate disposition of Buske's alternative motions will either allow the verdict to stand or will instead reopen the case. If the court allows the verdict to stand, it will obviously deny both of Buske's alternative motions. However, pursuant to this rule, if the court overturns the jury verdict, the court must do so by making one of two possible dispositions of the case: it must either order a new trial or must instead direct the entry of judgment as a matter of law. Thus, although the rule provides for alternative post-trial motions by a party dissatisfied with a jury verdict, the court cannot make alternative dispositions, granting both post-trial motions in the alternative. Instead, the court must grant only one of the alternative motions, either the motion for new trial or the motion for judgment as a matter of law. *Fed.R.Civ.P.* 50(b).

With these principles in mind concerning the standards for resolving post-trial motions under Federal Rules of Civil Procedure 50 and 59, the court turns to an examination of the evidence introduced at trial in support of and in defense to Century Wrecker's claims to determine whether post-trial relief from the jury's verdicts against Buske is appropriate.

### 2. Disposition of Buske's motions

Buske bases its post-trial motions on three grounds: (1) that there was insufficient evidence of willfulness to justify submission of that issue to the jury; (2) that there was insufficient evidence of Earl Buske's personal liability to justify submission of that issue to the jury; and (3) that Century Wrecker failed to provide the jury a "reasonable basis" upon which to calculate damages, a failure which Buske argues entitles it to judgment as a matter of law on the issue of damages. In response, Century Wrecker contends that the jury's conclusion that the infringement on the part of Buske was willful is supported by the clear evidence of record. Also, Century Wrecker maintains that there is sufficient evidence to support the jury's verdict that Buske personally induced infringement of the patents-in-suit. Lastly, Century Wrecker argues that the jury's determination of damages in the amount of $1,088,547 is based on substantial evidence in the record.[7] The court will address *seriatim* each of the grounds upon which Buske's motions are based.

### a. Willful infringement

In its motions, Buske claims the jury verdict regarding the issue of willfulness was not supported by sufficient evidence in the record. To support this claim, Buske argues it began producing and selling the devices at issue before Century Wrecker's patents were issued. Buske further alleges it had a reasonable basis for believing it had a legal right to produce and sell the patented devices and for believing Century Wrecker's patents were invalid. Buske cites in support of its beliefs concerning invalidity what came to be known in this litigation as "the Zachovich story,"[8] and additionally points to the "List-

---

**7.** In its brief, Buske was not altogether clear regarding the relief it seeks. Specifically, it is unclear to the court whether Buske is seeking a new trial on each of the grounds asserted in the event the court does not grant Buske's request for judgment as a matter of law. Buske notes in its brief that its motion for judgment as a matter of law, new trial, or amendment of judgment is based on three independent grounds. However, Buske concluded its section regarding the issue of willfulness by contending that "judgment should be entered in favor of Defendants on the issue of willfulness," with no mention of a new trial. Defendant's Brief, p. 8. Likewise, Buske concluded its argument about damages by stating that "judgment should now be granted on the issue of damages in favor of the Defendants." Defendant's Brief, p. 10. These qualifications

asserted in Buske's brief imply that Buske is seeking solely a judgment as a matter of law on the issues of willfulness and damages. However, at the hearing on this motion, Buske clarified its intention only regarding the issue of damages, informing the court it is seeking a judgment as a matter of law on this question, not a new trial. Because Buske did not similarly limit its request for relief on the issue of willfulness at the hearing, the court will evaluate the issues of willfulness and inducement, both in terms of a motion for judgment as a matter of law and a motion for new trial.

**8.** Both parties have discussed "the Zackovich story" in their briefs. "The Zackovich story" refers to Ed Zackovich's testimony that he had

er patent." Buske argues that the reasonableness of its opinion on invalidity is further bolstered by Century Wrecker's own reliance on "the Zackovich story." Based on the evidence in the record, Buske asserts that the issue of willfulness was, in fact, a close question, and the jury's finding of willfulness was inappropriate.

In response, Century Wrecker disputes the issues raised by Buske, arguing the jury's finding of willfulness is supported by clear and convincing evidence in the record. In its brief, Century Wrecker points to several examples of testimony in the record to support its argument. First, Century Wrecker contends that both Michael Sturm, Buske's patent expert, and the models in evidence suggest Buske deliberately copied Century Wrecker's L-arms and underlifts. In addition, Century Wrecker maintains Buske failed to investigate the validity of the patent when faced with inconsistent statements from Ed Zackovich regarding Zackovich's acquisition of a patent for the L-arm device. Also, Century Wrecker argues that despite the fact that the Zackovich story was ultimately revealed as a fraud, Buske continued to infringe, not because of a belief that the patents were not infringed, but because the product was profitable. Century Wrecker further claims that Buske could not have possessed a good-faith and reasonable belief that it did not infringe because Buske produced no evidence indicating that reliance on the opinion of counsel was either in "good faith" or "reasonable." In fact, Century Wrecker asserts the only evidence relating to a legal opinion regarding infringement showed that Buske ignored patent counsel's opinion, and Century Wrecker further characterizes Buske's inability to recall the content of the legal opinions it received as proof of bad faith. Lastly, Century Wrecker argues that, whereas it had no affirmative duty to investigate the Zackovich story, Buske did have such an affirmative obligation to exercise due care in determining the validity of the patents once it had been charged with infringement of Century Wrecker's patents. Century Wrecker asserts that Buske's failure

to satisfy this duty, coupled with Century Wrecker's ease in exposing Zackovich's fraud, provides ample support for the jury's finding of willfulness. These arguments must be analyzed in light of a substantial body of case law concerning "willfulness."

### i. Definition of willfulness

Willfulness is a question of fact and involves a determination as to an infringer's state of mind. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed. Cir.1995) (willfulness is a question of fact that involves elements of intent, reasonableness, and belief); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed.Cir.1995) (same); *Electro Medical Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1056 (Fed.Cir. 1994); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed.Cir.1992); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1565 (Fed.Cir.1983) (intent and reasonable beliefs are the primary focus of a willful infringement inquiry). Specifically, in determining the question of willfulness, the primary consideration is whether the infringer acted in disregard of the infringed patent with no reasonable basis to believe it had a right to do the acts in question. *Pall Corp.*, 66 F.3d at 1221 (factfinder should examine whether the infringer deliberately disregarded the property rights of the patentee); *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed.Cir. 1992) (the focus of a willfulness inquiry should be on whether the infringer had no reasonable belief for thinking it had a legal right to continue its conduct). One who has actual notice of a patent owner's rights has an affirmative duty to respect those rights. *Read Corp.*, 970 F.2d at 828 (citing *Rolls-Royce, Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109 (Fed.Cir.1986)); *Avia Group, Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1566 (Fed.Cir.1988).

In addition, willfulness must be established by clear and convincing evidence. *Pall Corp.*, 66 F.3d at 1221 (willfulness warrants a clear and convincing standard because it is a punitive finding and can result in

---

told Buske, among others, that he developed the L-arm before Century Wrecker, thereby forming the basis of Buske's belief that Century Wrecker's

patent was invalid based upon a prior use. Zackovich deposition, docket no. 178, p. 149.

the multiplication of damages); *Electro Medical Sys., S.A.*, 34 F.3d at 1056; *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 181 (Fed.Cir.1994). In establishing willfulness, there are no definitive rules regarding willfulness or precise factors indicative of willfulness. *Graco, Inc.*, 60 F.3d at 792; *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1279 (Fed.Cir.1995); *American Medical Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1530 (Fed.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1647, 128 L.Ed.2d 366 (1994). Rather, willfulness is determined by the totality of the circumstances. *Graco, Inc.*, 60 F.3d at 792; *Transmatic, Inc.*, 53 F.3d at 1279; *American Medical Sys., Inc.*, 6 F.3d at 1530. In *Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 (Fed. Cir.1986), *overruled on other grounds*, *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed.Cir.1992), the Federal Circuit discussed some relevant factors to support a finding of willfulness, namely, (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when it knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid or that it was not infringed; and (3) the infringer's behavior as a party to the litigation. *Read Corp.*, 970 F.2d at 826–28 (citing *Bott v. Four Star Corp.*, 807 F.2d 1567, 1572). Among the additional circumstances that might indicate the presence of willfulness are (4) a defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. *Read Corp.*, 970 F.2d at 826–28.

■ One of the relevant factors in determining willfulness involves the infringer's actions taken to comply with its "affirmative duty to exercise due care to determine whether or not [it] is infringing." *Underwater Devices Inc. v. Morrison–Knudsen Co., Inc.*, 717 F.2d 1380, 1389–90 (Fed.Cir.1983); *see also Electro Medical Sys., S.A.*, 34 F.3d at 1056; *Read*, 970 F.2d at 828 (citing *Rolls–Royce, Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109 (Fed.Cir.1986)). This affirmative duty typically involves obtaining advice of legal counsel, although the absence of such advice does not automatically warrant a finding of willfulness. *See Ryco, Inc. v. Ag–Bag Corp.*, 857 F.2d 1418, 1428 (Fed.Cir.1988); *Spindelfabrik Suessen–Schurr v. Schubert & Salzer*, 829 F.2d 1075, 1084 (Fed.Cir.1987); *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1579 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987). A critical factor in evaluating the effect of an opinion of counsel on willfulness of patent infringement is the reasonableness of the party's reliance thereon. *See Amsted Indus., Inc.*, 24 F.3d at 181 (the focus of evaluation should be on the nature of the opinion and the effect it had on the infringer's action); *American Medical Sys., Inc.*, 6 F.3d at 1530. The inference that an opinion of an attorney rendered prior to the conduct of the infringer was unfavorable does not preclude the consideration of other relevant factors, as set out in *Read Corp.*, in determining whether infringement was willful. *Electro Medical Sys., S.A.*, 34 F.3d at 1056. Having identified the applicable factors, the court turns to consideration of the evidence of "willfulness" upon which the jury made its determination.

### ii. *Evidence in the record of willfulness*

■ In examining the evidence of record, the court first looks at the deliberate nature of Buske's conduct. *Read Corp.*, 970 F.2d at 826–28; *Bott*, 807 F.2d at 1572. Both the court and the jury had the opportunity to view both Century Wrecker's and Buske's full-scale models of the L-arm and the under-lift assemblies to which the patents in suit pertain. The models are so conspicuously similar that, merely by viewing this evidence, the jury could have readily inferred that Buske copied Century Wrecker's device. Furthermore, in his cross-examination of Buske's expert witness, Michael Sturm, Century Wrecker's counsel, Edmund Sease, posed the following hypothetical to Sturm:

Assume the evidence shows that before Defendants' structure was commercialized, Defendant had prior access to Century Wrecker's unit in the marketplace; had prior access to brochures; that when De-

fendants heard about this product said "we'd better follow suit;" and that the reason they built the device was because they were "inspired by the marketplace"— would that indicate circumstantial factors of copying?

In response to this hypothetical, Sturm conceded that the evidence detailed in the hypothetical, assuming it was true, would indicate circumstantial evidence of copying. The testimony at trial established precisely the same evidence detailed in the hypothetical posed to Sturm. Earl Buske testified that he had viewed Century Wrecker's wheel lift before he developed Buske's BodyGuard; Earl Buske had access to brochures; and upon hearing about Century Wrecker's introduction of its wheel lift, his response was "to get to work and follow suit." In addition, Chuck Buske testified that the Buske companies' production was inspired by market demand. Based on the testimony of Earl Buske, Chuck Buske, and Michael Sturm, as well as the models in evidence, the court concludes that the evidence readily suggests that Buske deliberately copied Century Wrecker's L-arms and under-lifts.

Thus, the evidence does not "point one way," Buske's way, and is not "susceptible of no reasonable inference sustaining the position of" Century Wrecker. *Pence*, 961 F.2d at 779. Instead, it is manifestly apparent that a reasonable inference of deliberate copying, sustaining Century Wrecker's position on "wilfulness," can be drawn from the evidence. *Id.* In these circumstances, judgment as a matter of law in Buske's favor cannot be granted. *Id.* Also, because the court finds that such an inference is in keeping with, not contrary to, the great weight of the evidence, the court will not grant Buske's alternative motion for a new trial. *Id.* at 780.

Furthermore, in analyzing Buske's alleged failure to investigate the scope of Century Wrecker's patents, the evidence in the record indicates that the only legal opinions Buske allegedly received were oral and that Earl Buske cannot recall the content of those opinions. The jury could have found that Buske's vagueness regarding the legal opinions he had received did not lend credence to his alleged good-faith, reasonable belief that

Century Wrecker's patents were invalid. Thus, the court concludes that the evidence submitted at trial regarding Buske's alleged failure to investigate the scope of the patents, coupled with the evidence relating to the deliberate nature of Buske's conduct, again do not point only one way, Buske's way, requiring judgment as a matter of law in Buske's favor. *Id.* at 779. Such evidence also lends to the greater weight of the evidence in favor of the jury's verdict, also making a new trial inappropriate. *Id.* at 780.

However, the court is not persuaded that the question of Buske's willfulness is as one-sided as Century Wrecker suggests. In fact, while the court finds there was substantial evidence to support the jury's finding of willfulness, the court believes there was also substantial evidence to support a jury's opposite conclusion, had the jury found that Buske's conduct was *not* willful. Century Wrecker asserts that Buske failed its affirmative duty to investigate the scope of Century Wrecker's patents; however, the existence and extent of Buske's good-faith reliance has significant support in the record. Century Wrecker maintains that Buske's reliance on the Zackovich story, which Century Wrecker claims it "easily" exposed as untrue, is indicative of bad faith and must be construed as a failure to investigate the scope of Century Wrecker's patents. The court is not convinced that Buske's reliance on the Zackovich story was so misguided as to constitute a failure to investigate the scope of Century Wrecker's patents or evidence of willful conduct. In fact, Century Wrecker itself relied on the Zackovich story in pleadings filed in an independent lawsuit between Century Wrecker and Zackovich. Thus, the court does not believe that Century Wrecker's alleged ease in uncovering the truth behind the Zackovich story should serve as the barometer for determining Buske's alleged failure to investigate the scope of Century Wrecker's patents.

Likewise, even though Buske relied solely on oral opinions of counsel and could not recall the content of the legal opinions that he received, he never wavered from his testimony that such oral opinions did, in fact,

exist, and that those opinions formed the basis for his good-faith belief that Century Wrecker's patents were invalid. Further support of Buske's good-faith belief in the invalidity of Century Wrecker's patents can be found in Sturm's testimony, because Sturm opined that Century Wrecker's L-arm patent was invalid based on the Lister patent. Thus, particularly considering the existence of the Lister patent, the court believes a trier of fact could have reasonably concluded that Century Wrecker's patents were invalid. This conclusion that reasonable jurors could differ as to the conclusion that could be drawn from the evidence only confirms the inappropriateness of judgment as a matter of law in Buske's favor. *Minneapolis Community Dev. Agency,* 928 F.2d at 301. While the court finds clear and convincing evidence to support the jury's finding of willfulness, it also finds sufficient contrary evidence to make the court's determination of which way the greater weight of the evidence lies less than obvious when the court considers Buske's alternative motion for a new trial. Nonetheless, the court finds the balance tips in favor of letting the jury's verdict stand and will not grant a new trial on this issue. *Pence,* 961 F.2d at 780.

#### b. Inducement

As its second ground for post-trial relief, Buske asserts the evidence was insufficient to support the jury's finding that Earl Buske was personally liable for inducing infringement. Buske claims Century Wrecker did not generate a material issue regarding Earl Buske's intent to induce infringing conduct, or that he had actual knowledge that he was infringing Century Wrecker's patents. Buske alleges that Earl Buske lacked the intent required to be "culpable" because he relied on the advice of counsel. On the other hand, Century Wrecker argues the evidence establishes that Earl Buske was the moving, active, and conscious force behind the infringement by the Buske corporations. Century Wrecker also asserts that Earl Buske did not introduce any evidence that would have permitted the jury to conclude that the

legal opinions Earl Buske received were both reasoned and competent.

 The United States Code provides for imposition of personal liability upon a corporate officer for "inducing infringement" in 35 U.S.C. § 271(b).[9] Liability for inducement is dependent upon the existence of direct infringement, *see, e.g., Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed.Cir.1990), which, in this case, the court found had occurred when it granted Century Wrecker's motion for summary judgment. Pursuant to this section, the patent owner has the burden of establishing an alleged infringer "knowingly induced infringement." *Id.*

 For an opinion of counsel to be a defense to personal liability for inducement, the opinion must be both reasoned and competent. *Read Corp.,* 970 F.2d at 829. In addition, if an infringer chooses to withhold disclosure of the advice of counsel, the fact-finder can draw a negative inference about that opinion. *American Medical Sys., Inc.,* 6 F.3d at 1531; *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1126 (Fed.Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993); *Kloster Speedsteel AB,* 793 F.2d at 1580. These are the legal standards for "inducement" in light of which the court must consider the evidence presented to the jury at trial.

 Several facts in the record provide circumstantial evidence of Earl Buske's intent to infringe Century Wrecker's patents, including the fact that Earl Buske was president of both the manufacturing and distributing companies; he was the majority shareholder of defendant Buske Manufacturing and controlled the majority of shares of defendant Buske Distributing; and he was the chairman of the board of both defendant companies. Also, Earl Buske helped design the wheel lift that infringed Century Wrecker's patent; he decided to make the L-arms; he approved the change to the L-arms; and he approved all design changes to Buske's devices. Also, although Earl Buske claims

---

**9.** 35 U.S.C. § 271(b) specifically provides as follows: "Whoever actively induces infringement of a patent shall be liable as an infringer."

he relied on reasonable opinions from counsel and thus is not personally liable for inducement, there was evidence in the record indicating he could not recall the content of these legal opinions. The providers of these legal opinions could have testified as to the content of these opinions and neglected to do so; this absence of testimony could have created a negative inference and led the jury to believe Buske did not reasonably rely on the advice of counsel. Just as the factfinder is entitled to draw a negative inference about the opinion of counsel when the opinion itself is withheld by the alleged infringer, *American Med. Sys.*, 6 F.3d at 1531, the court believes the jury was entitled to draw a negative inference from Earl Buske's inability to articulate what advice he had received from counsel. In addition, the alleged legal opinions upon which Buske claimed to rely were oral, and Buske did not know if the providers of the opinions reviewed the file history, references in the file history, or references not cited by the examiner. Based on these facts in the record, the jury could have concluded that Buske did not reasonably rely on competent opinions of counsel and therefore did, in fact, induce infringement. The court finds that the greater weight of the evidence supports the jury's finding that Earl Buske induced infringement of Century Wrecker's patents pursuant to 35 U.S.C. § 271(b), and Buske's motion for new trial must be denied. *Pence,* 961 F.2d at 780. This same evidence demonstrates that the evidence does not point all one way, Buske's way, such that judgment as a matter of law in Buske's favor would be appropriate. *Id.* at 779. Therefore, Buske's alternative motions for post-trial relief from the jury's verdict of inducement of infringement must also be denied.

### c. Calculation of damages

Lastly, Buske argues it is entitled to judgment as a matter of law on the issue of damages because the evidence presented by Century Wrecker concerning damages is based upon an inapplicable theory of damages and is thus irrelevant. This issue is the most troublesome of the three issues raised by Buske in its motion seeking to overturn the jury verdict. Buske argues Century Wrecker's expert witness, Dr. Newkirk, based his damages calculations, including the determination of a reasonable royalty, upon the "entire market value rule." However, in response to a special interrogatory, the jury rejected the entire market value rule, and instead calculated damages in favor of Century Wrecker based solely upon a reasonable royalty for the patented assemblies alone. Because the jury found the entire market value rule was inapplicable, Buske argues that Dr. Newkirk's testimony regarding a reasonable royalty calculation is irrelevant. Therefore, Buske asserts the damages award must be vacated. Century Wrecker, on the other hand, maintains that although Dr. Newkirk did, in fact, rely on the entire market value rule, he nonetheless testified as to how damages could be calculated using other methods and gave the jury numbers upon which to base alternative damages calculations. Furthermore, Century Wrecker asserts the reasonable royalty range Dr. Newkirk offered at trial related to the time of infringement, and was not an after-the-fact assessment. Therefore, his testimony was not irrelevant and the damages award should not be vacated.[10]

In its supplemental brief of authorities, Buske relies on *Unisplay, S.A. v. American Electronic Sign Co., Inc.,* 69 F.3d 512 (Fed. Cir.1995). In *Unisplay,* the Federal Circuit vacated an award of damages because it was based on an inapplicable theory of damages and was unsupported by relevant evidence in the record. *Id.* Specifically, the court held that a reasonable royalty rate as determined by the factfinder must be supported by relevant evidence in the record. *Id.* Furthermore, "a reasonable royalty determination for purposes of making a damages evaluation

---

10. In its response to Buske's brief, Century Wrecker argues that Buske has waived its objection to Dr. Newkirk's reasonable royalty evidence by failing to object or move to exclude Dr. Newkirk's reasonable royalty range evidence and failing to raise this issue in its motion for judgment as a matter of law made during the trial. Buske, however, asserted its objections to Dr. Newkirk's analysis of damages clearly and consistently before and throughout the trial, as indicated in the final pretrial order and in the record. Thus, the court concludes that Buske has not waived its objection to Dr. Newkirk's reasonable royalty evidence.

must relate to the time infringement occurred, and not be an after-the-fact assessment." *Id.* (citing *Hanson v. Alpine Ski Area, Inc.,* 718 F.2d 1075, 1079 (Fed.Cir. 1983)). In *Unisplay,* the court vacated the award of damages because the plaintiff's expert did not focus his testimony regarding a reasonable royalty on the time of infringement; rather, the plaintiff's expert testified about what royalty rate the parties might arrive upon at the time of trial. *Id.*

Here, although Dr. Newkirk did rely on the entire market value theory, Dr. Newkirk also presented the jury with calculations of damages under other methods. Dr. Newkirk complied with the requirements of *Unisplay* in that during his testimony, he provided a royalty rate methodology premised upon a determination at the proper time—when infringement commenced. Therefore, the fact that the Federal Circuit in *Unisplay* vacated an award of damages based upon an after-the-fact assessment of the reasonable royalty rate should not necessarily mandate entry of judgment as a matter of law contrary to the jury's verdict.

 In determining a reasonable royalty, the jury is not restricted to a specific figure offered by one of the parties; rather, the award must be within the range covered by the record as a whole. *Unisplay,* 69 F.3d at 512 (citing *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,* 926 F.2d 1161, 1168 (Fed. Cir.1991)). In addition, the jury can also consider the sales of unpatented goods in its reasonable royalty evaluation. *See Comair Rotron Inc. v. Matsushita Elec. Corp.,* 31 F.3d 1177, 33 U.S.P.Q.2d 1785, 1790, 1994 WL 381809 at *6 (Fed.Cir.1994) (rejection of the entire market value rule does not preclude consideration of the "inherent benefits of the claimed invention" in assessing the reasonable royalty); *see also* Dr. Newkirk's report, pp. 6–18. Dr. Newkirk's royalty base was comprised of both patented and unpatented components, and he opined that the proper royalty range was ten percent to twenty percent. While Dr. Newkirk's royalty base was not chosen by the jury, that fact alone should not render his opinion regarding a reasonable royalty range irrelevant. The jury apparently used a reasonable royalty

rate of ten percent, the lowest end of Dr. Newkirk's reasonable royalty range. The ten percent figure was provided by Dr. Newkirk, and Buske offered no evidence to contest this figure. Furthermore, Mary Ann Buske testified on direct examination that Buske's total sales of the L-arms and the under-lifts was $10,884,573. Based on the amount of damages awarded, the jury apparently used Mrs. Buske's calculation of Buske's sales as the royalty base of $10,884,-573. Thus, the jury apparently used the plaintiff's reasonable royalty range and the defendants' royalty base to calculate a damages award in favor of Century Wrecker.

 The entire market value rule and reasonable royalty are two different rules for determining damages. *See Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1555 (Fed.Cir. 1995) (en banc) (where the application of the entire market value rule was reversed, the determination of reasonable royalty rate was affirmed), *cert. denied,* ── U.S. ──, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995). Thus, the court does not believe that the jury's reliance on Century Wrecker's uncontested royalty range and Buske's royalty base should warrant a judgment as a matter of law on the damages award. The focus, as the Federal Circuit articulated in *Unisplay,* is the requirement of a factual basis for a determination of a reasonable royalty, relating to the time the infringement occurred. *Unisplay,* 69 F.3d at 512. The court is not persuaded to interpret *Unisplay* as precluding a plaintiff's recovery of damages merely because the plaintiff's expert witness relied on a particular theory which the jury later found inapplicable. Here, the jury's apparent adoption of both the royalty range and the royalty base are supported by the record as a whole. Despite the inapplicability of the entire market value rule, the jury in this case had a factual basis for determining the ten percent reasonable royalty. Therefore, the court concludes that there is sufficient evidence in the record to support the jury's calculation of damages, and the jury's ultimate calculation is within the range encompassed by the record as a whole.

Thus, on this issue, as well as on the other two presented in Buske's alternative post-

trial motions, the court concludes that no relief can be granted. The evidence on royalties does not point all one way, Buske's way, and judgment as a matter of law contrary to the jury's verdict is therefore inappropriate. *Pence*, 961 F.2d at 779.

#### d. Summary of disposition of Buske's post-trial motions

The court concludes that there is sufficient evidence in the record to support the jury's findings regarding willfulness, inducement, and damages, and that all of the evidence does not point in Buske's favor; rather, the evidence is indeed susceptible of a reasonable inference sustaining Century Wrecker's position on each issue. *Pence*, 961 F.2d at 779. Although the court considers the jury's finding on willfulness to be a close question and believes that "reasonable jurors could differ as to the conclusion that could be drawn from the evidence," the latter conclusion requires the court to deny Buske's motion for judgment as a matter of law pursuant to *Fed. R.Civ.P.* 50. *Minneapolis Community Dev. Agency*, 928 F.2d at 301 (quoting *Atlas Pile Driving Co.*, 886 F.2d at 989).

██ In the alternative, Buske moved for new trial or alteration of judgment on the issues of willfulness and inducement. When a party files a motion to amend a judgment or grant a new trial, the district court must determine whether the jury's verdict is against clear or great weight of the evidence. *Unisplay*, 69 F.3d at 512; *Shaffer*, 65 F.3d at 117; *Rush*, 45 F.3d at 1203; *Nelson*, 26 F.3d at 800; *Jacobs Mfg. Co.*, 19 F.3d at 1266; *Pence*, 961 F.2d at 780. Here, the jury's finding of Buske's willfulness in infringing Century Wrecker's patents was not against the greater weight of the evidence. Also, the jury's finding regarding Earl Buske's inducement of the infringement was supported by both circumstantial evidence of Earl Buske's control over and status within the defendant corporations, as well as evidence regarding the legal opinions he allegedly relied upon in this case. In consideration of the evidence on these issues, as well as the evidence in the

record as a whole, the court concludes the jury's verdict in this case is not against clear or greater weight of the evidence. Thus, Buske's alternative motion for new trial or alteration of judgment pursuant to *Fed. R.Civ.P.* 59 is also denied. Having disposed of Buske's post-trial motions, the court turns next to the examination and disposition of Century Wrecker's post-trial motions, beginning with Century Wrecker's motion for entry of judgment, including prejudgment interest.

### B. Plaintiff's Motion For Entry Of Judgment, Including Prejudgment Interest

Because the court has denied Buske's motion for judgment as a matter of law and its motion for new trial or alteration of judgment, the court grants Century Wrecker's motion for entry of judgment in its favor. However, the issue of whether prejudgment interest should be awarded involves a more detailed analysis of the statute and case law. Thus, before proceeding to the parties' arguments concerning whether the entry of judgment should include an award of prejudgment interest, the court first examines the historical background and applicable law governing the issue of prejudgment interest in the context of patent law.

#### 1. Historical background and case law regarding prejudgment interest

In *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983), the United States Supreme Court established a new standard regarding prejudgment interest in the context of patent infringement cases. In reaching its decision in *Devex*, the Court reviewed the background and history of prejudgment interest in the context of patent infringement cases which precipitated the Court's change in the standard. Prior to 1946, the statutory provision governing a plaintiff's recovery in a patent infringement suit did not contain a reference to prejudgment interest.[11] *Devex*, 461 U.S.

---

11. Rev.Stat. § 4921, as amended, 42 Stat. 392, 35 U.S.C. § 70 (1964 ed.), provided as follows: [U]pon a decree being rendered in any such case for an infringement the complainant shall

be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby.

at 651, 103 S.Ct. at 2060. Rather, a common-law standard articulated by the Supreme Court governed the award of prejudgment interest in patent infringement cases. *See id.* (citing *Duplate Corp. v. Triplex Safety Glass Co.,* 298 U.S. 448, 56 S.Ct. 792, 80 L.Ed. 1274 (1936) (awarding prejudgment interest from the date on which damages were liquidated, and from the date of infringement in the absence of liquidation only in "exceptional circumstances," i.e. bad faith); *Tilghman v. Proctor,* 125 U.S. 136, 8 S.Ct. 894, 31 L.Ed. 664 (1888)).

In 1946, Congress amended the statutory provisions governing recovery in patent infringement cases. *See id.* (citing Act of Aug. 1, 1946, § 1, 60 Stat. 778, 35 U.S.C. §§ 67, 70 (1946 ed.)).[12] In *Devex,* the Court examined 35 U.S.C. § 284 and its effect on the former common-law standard governing prejudgment interest in patent infringement cases. Specifically, the Court stated

[W]e have little doubt that § 284 does not incorporate the *Duplate* standard. Under that standard, which evolved as a matter of federal common law, prejudgment interest could not be awarded where damages were unliquidated, absent bad faith or other exceptional circumstances. By contrast, § 284 gives a court general authority to fix interest and costs. On the face of § 284, a court's authority to award interest is not restricted to exceptional circumstances, and there is no warrant for imposing such a limitation. When Congress wished to limit an element of recovery in a patent infringement action, it said so explicitly. With respect to attorney's fees, Congress expressly provided that a court could award such fees to a prevailing party only "in exceptional cases." 35 U.S.C. § 285. The power to award interest was not similarly restricted.

*Devex,* 461 U.S. at 653, 103 S.Ct. at 2061.

The Court further recognized the need for consistency between the standard governing an award of prejudgment interest and Congress' underlying purpose in enacting § 284—to afford patent owners full compensation for the infringement of their patent. *Id.* at 654–55, 103 S.Ct. at 2062; *King Instruments Corp. v. Perego,* 65 F.3d 941, 948 (Fed.Cir.1995). Often, an award of prejudgment interest is necessary to ensure that the plaintiff is placed in the same position as he would have been in if the defendant had entered into a reasonable royalty agreement. *Id.* at 655, 103 S.Ct. at 2062; *see also Beatrice Foods v. New England Printing,* 923 F.2d 1576, 1580 (Fed.Cir.1991); *Bio–Rad Laboratories v. Nicolet Instrument Corp.,* 807 F.2d 964, 967 (Fed.Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3187, 96 L.Ed.2d 675 (1987); *Paper Converting Machine v. Magna–Graphics Corp.,* 745 F.2d 11, 23 (Fed.Cir.1984) (citing *Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed.Cir.1983) (award of prejudgment interest compensates for the delay the plaintiff experiences in obtaining money he would have received sooner if no infringement had occurred)); *Valmet Paper Machinery, Inc. v. Beloit Corp.,* 895 F.Supp. 1158, 1176–77 (W.D.Wis.1995). In light of that purpose, the Court concluded that prejudgment interest should ordinarily be awarded, "absent some justification for withholding such an award." *Devex,* 461 U.S. at 657, 103 S.Ct. at 2063; *see also Lummus Indus., Inc. v. D.M. & E. Corp.,* 862 F.2d 267, 274 (Fed.Cir.1988); *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.,* 847 F.2d 795, 800 (Fed.Cir.1988); *Bio–Rad,* 807 F.2d at 967; *Radio Steel & Mfg. Co. v. MTD Prods., Inc.,* 788 F.2d 1554, 1558 (Fed.Cir.1986); *Paper Converting Mach. Co.,* 745 F.2d at 23; *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 556 (Fed.Cir. 1984); *Valmet Paper Machinery,* 895 F.Supp. at 1176–77; *Endress & Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.,* 892 F.Supp. 1123, 1132 (S.D.Ind.1995); *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 891

---

*Devex,* 461 U.S. at 651, 103 S.Ct. at 2060 (citing Rev.Stat. § 4921, as amended, 42 Stat. 392, 35 U.S.C. § 70 (1964 ed.)).

**12.** In 1952, Congress consolidated §§ 67 and 70, and these two sections became 35 U.S.C. § 284, which provides in pertinent part:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284.

F.Supp. 751, 832 (E.D.N.Y.1995); *Virginia Panel Corp. v. MacPanel Co.*, 887 F.Supp. 880, 886 (W.D.Va.1995); *Schneider (Europe) AG v. Scimed Life Sys., Inc.*, 852 F.Supp. 813, 860 (D.Minn.1994), *cert. denied,* — U.S. ——, 116 S.Ct. 520, 133 L.Ed.2d 427 (1995); *In re Hayes Microcomputer Prods., Inc. Patent Litigation,* 766 F.Supp. 818, 824 (N.D.Cal.1991), *aff'd,* 982 F.2d 1527 (Fed.Cir. 1992).

■ Prejudgment interest should be calculated from the date of infringement to the date of judgment. *Nickson Indus.*, 847 F.2d at 800; *Endress & Hauser, Inc.*, 892 F.Supp. at 1132; *Stryker Corp.*, 891 F.Supp. at 832; *Schneider,* 852 F.Supp. at 850; *Goodwall Const. Co. v. Beers Const. Co.*, 824 F.Supp. 1044, 1058 (N.D.Ga.1992), *aff'd,* 991 F.2d 751 (Fed.Cir.1993); *In re Hayes,* 766 F.Supp. at 824. However, the Court explicitly stated that § 284, with its language regarding interest as "fixed by the court," leaves the court some discretion in awarding prejudgment interest. *Devex,* 461 U.S. at 656–57, 103 S.Ct. at 2062–63; *see also Lummus Indus.*, 862 F.2d at 274; *Bio–Rad,* 807 F.2d at 967. As an example, the Court indicated that "it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *Devex,* 461 U.S. at 657, 103 S.Ct. at 2063; *see also City of Milwaukee v. Cement Div. of Nat'l Gypsum Co.,* — U.S. ——, 115 S.Ct. 2091, 2096, 132 L.Ed.2d 148 (1995) (citing *Devex,* 461 U.S. at 657, 103 S.Ct. at 2063) ("although we have never attempted to exhaustively catalogue the circumstances that will justify the denial interest, ... the most obvious example is the plaintiff's responsibility for 'undue delay in prosecuting the lawsuit' "); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1486 (Fed.Cir.1990) (award of prejudgment interest is not an abuse of discretion where undue delay in prosecution was due to plaintiff's involvement in another patent infringement suit and defendant knew about this litigation and controlled and financed the third-party's defense); *Lummus Indus.*, 862 F.2d at 275 (limitation or denial of prejudgment interest because of plaintiff's undue delay in prosecuting his claim is the exception, not the rule; there must be prejudice to

the defendant and no reasonable excuse for the unreasonable delay in order to limit or deny interest on this basis); *Nickson Indus.*, 847 F.2d at 800; *Bio–Rad,* 807 F.2d at 967–68 (no undue delay present where plaintiff filed its complaint almost one year after defendant delivered its first infringing device, and less than eight months after termination of settlement negotiations); *Radio Steel,* 788 F.2d at 1558; *Laitram Corp. v. Cambridge Wire,* 785 F.2d 292, 295 (Fed.Cir.1986); *Grain Processing Corp. v. American Maize Prods. Co.*, 893 F.Supp. 1386, 1396 (N.D.Ind. 1995) (citing *Milwaukee,* 115 S.Ct. at 2096) (although a lengthy delay in resolving a case is not a reason to deny prejudgment interest, a plaintiff's gratuitous delay in prosecuting a lawsuit might support such an adjustment in interest); *Virginia Panel Corp.*, 887 F.Supp. at 886 (district court may withhold prejudgment interest based on a delay in prosecution, but there must be prejudice to the defendant in order to limit or deny interest on this basis); *Maxwell v. J. Baker, Inc.*, 879 F.Supp. 1007, 1009 (D.Minn.1995) (withholding prejudgment interest based on a delay in prosecuting the patent suit is the exception, not the rule, in patent cases); *Mars, Inc. v. Conlux USA Corp.*, 818 F.Supp. 707, 720 (D.Del.) (no sufficient factual basis exists to attribute any delay in litigation to one party or the other), *aff'd,* 16 F.3d 421 (Fed.Cir. 1993).

The Court did not restrict the list of possible circumstances justifying a limitation or a denial of an award of prejudgment interest, opting not to delineate examples of such circumstances. *See Devex,* 461 U.S. at 657, 103 S.Ct. at 2063; *see also Bio–Rad,* 807 F.2d at 967; *Ristvedt–Johnson, Inc. v. Brandt, Inc.*, 805 F.Supp. 557, 568 (N.D.Ill.1992) (citing *Radio Steel & Mfg. v. MTD Prods., Inc.*, 788 F.2d 1554, 1558 (Fed.Cir.1986)) (court may weigh factors which justify the denial of prejudgment interest; one factor to consider is plaintiff's dilatory action during discovery). However, the Court articulated the need for a justification from the district court for limiting or denying prejudgment interest. *Id.* In response, the Federal Circuit has required that a district court's justification for limiting or denying prejudgment interest "must have

some relationship to the award of prejudgment interest." *Bio–Rad*, 807 F.2d at 967 (quoting *Radio Steel & Mfg. Co. v. MTD Prods.*, 788 F.2d 1554, 1557–58 (Fed.Cir. 1986)); *see also Nickson Indus.*, 847 F.2d at 800; *Radio Steel*, 788 F.2d at 1558.

The rate of prejudgment interest and the issue of whether the interest awarded should be simple or compounded are matters left mostly to the discretion of the district court. *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1580 (Fed.Cir.1988) (district court declined to establish a rule that prejudgment interest at the prime rate should be awarded as a matter of course in every case); *Bio–Rad*, 807 F.2d at 969; *Paper Converting Mach. Co.*, 745 F.2d at 24; *Gyromat Corp.*, 735 F.2d at 557; *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1520 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984); *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1066 (Fed.Cir.1983); *Endress & Hauser, Inc.*, 892 F.Supp. at 1132; *Stryker Corp.*, 891 F.Supp. at 832–33 (citing *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 939 F.2d 1540, 1545 (Fed.Cir.1991), and *Rite–Hite*, 56 F.3d at 1555–56) (district court has wide latitude in selecting interest rates and in determining whether interest should be simple or compound); *Schneider*, 852 F.Supp. at 860; *Goodwall Const. Co.*, 824 F.Supp. at 1058; *In re Hayes*, 766 F.Supp. at 824; *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F.Supp. 1101, 1103 (S.D.Cal. 1990), *aff'd*, 977 F.2d 1555 (Fed.Cir.1992). In exercising this discretion, however, the district court should focus on the underlying purpose of prejudgment interest, which is to fully compensate the patent owner for infringement. *Bio–Rad*, 807 F.2d at 969; *Endress & Hauser, Inc.*, 892 F.Supp. at 1132. However, prejudgment interest can only be applied to the actual damage portion of a damage award, as opposed to the punitive or enhanced portion.[13] *Beatrice Foods*, 923 F.2d at 1580; *Lam, Inc.*, 718 F.2d at 1066;

*Endress & Hauser, Inc.*, 892 F.Supp. at 1132 (citing *Underwater Devices, Inc. v. Morrison–Knudsen Co., Inc.*, 717 F.2d 1380 (Fed. Cir.1983)); *Goodwall Const. Co.*, 824 F.Supp. at 1058; *In re Hayes*, 766 F.Supp. at 825 n. 9. On the other hand, prejudgment interest is not limited to damages based on a royalty. *Lummus Indus.*, 862 F.2d at 274 (citing *Gyromat Corp.*, 735 F.2d at 556); *Gyromat Corp.*, 735 F.2d at 556 (prejudgment interest applies to both royalties and lost profits).

Regarding the rate at which prejudgment interest is calculated, the district court has the discretion to determine whether to use the prime rate, the prime rate plus a percentage, the U.S. Treasury rate, state statutory rate, corporate bond rate, or whatever rate the court deems appropriate under the circumstances. *See generally Allen Archery, Inc. v. Browning Manuf. Co.*, 898 F.2d 787, 789 (Fed.Cir.1990); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir.1989); 5 Chisom, Patents § 20.03(4)(a)(v). The court may not, however, deny prejudgment interest merely because the calculation of the interest would be difficult. *Lummus Indus.*, 862 F.2d at 274 (citing *Lam, Inc.*, 718 F.2d at 1065). Some courts have opted to use the U.S. Treasury bill rate or the state statutory rate as the rate at which prejudgment interest is calculated. *See Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir.1989) (no abuse of discretion for the district court to use the U.S. Treasury bill rate rather than the prime rate; treasury rate adequately compensates the patent owner), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 747 (1990); *Schneider*, 852 F.Supp. at 850 (calculation of prejudgment interest is based on interest rates of government securities; this treasury rate is both reasonable and reliable); *Allen Archery, Inc. v. Browning Manuf. Co.*, 898 F.2d 787, 789 (Fed.Cir. 1990) (three month treasury bill represents a benchmark of the shortest-term, risk-free investment available to ordinary investors and is a proper basis upon which to compensate

---

**13.** The distinction between the application of prejudgment interest to an actual damage award, as opposed to a punitive damage award, lies in the purpose of each type of award. *Beatrice Foods*, 923 F.2d at 1580; Whereas the purpose of a punitive damage award is punishment, the focus of an actual damage award is compensation. *Beatrice Foods*, 923 F.2d at 1580; Because the underlying purpose of prejudgment interest is full compensation to the patent owner, prejudgment interest only applies to actual damage awards. *Beatrice Foods*, 923 F.2d at 1580.

the infringer for the foregone use of the money); *In re Hayes,* 766 F.Supp. at 824 (no evidence necessitating a deviation from the state statutory rate for prejudgment interest; large corporations borrow funds for all sorts of reasons and plaintiff's borrowing may have had nothing to do with lost royalties due to defendant's infringement); *Brooktree Corp.,* 757 F.Supp. at 1103 (citing *TWM Mfg. Co. v. Dura Corp.,* 231 U.S.P.Q. 525, 533, 1985 WL 72665 (E.D.Mich.1985)) (district court applied state statutory rate and noted that some courts have held that an award of prejudgment interest based upon the prime rate is not appropriate unless the claimant was actually forced to borrow money at that rate). In fact, "while it is true that the state statutory rate is not controlling in the context of a suit on a federal claim, courts do often use the statutory rate in the state in which they sit to calculate an award of prejudgment interest." *Brooktree Corp.,* 757 F.Supp. at 1103 (citing *Gyromat Corp.,* 735 F.2d at 551). On the other hand, other courts have refrained from using the U.S. Treasury bill rate to calculate prejudgment interest. *See Grain Processing Corp.,* 893 F.Supp. at 1396 (district court calculated prejudgment interest using the prime rate instead of the U.S. Treasury bill rate; the reason the Treasury bill rate is lower than the prime rate in the private sector is because the United States is almost certain to repay its loan, whereas no one would make a long-term voluntary loan to the plaintiff at the Treasury bill rate); *Stryker Corp.,* 891 F.Supp. at 833 (district court found the prime rate to be more reflective of the rate at which corporations would likely borrow funds, as opposed to the Treasury bill rate); *Mars, Inc.,* 818 F.Supp. at 720–21 (district court preferred prime rate over Treasury bill rate); *Ziggity Sys., Inc. v. Val Watering Sys.,* 769 F.Supp. 752, 831 (E.D.Pa. 1990) (citing *Gorenstein Enter., Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 436 (7th Cir.1989) (court suggests use of the prime rate to calculate prejudgment interest where there is no state statutory rate to apply)). The numerous possibilities these cases present for awarding and calculating prejudgment interest leave fertile ground from which arguments of the parties may grow.

### 2. *Century Wrecker's claim of prejudgment interest*

In its motion and accompanying brief, Century Wrecker claims it is entitled to an award of prejudgment interest in an amount sufficient to adequately compensate for Buske's infringement. As a suggested rate at which to calculate prejudgment interest, Century Wrecker argues primarily that the rate imposed should be Century Wrecker's corporate debt borrowing rate during the infringing period since July 1987. As support for this argument, Century Wrecker offers the affidavit of Vince Mish, the Chief Financial Officer of Century Wrecker, in which Mish asserts that Century Wrecker borrowed money and paid back loan amounts at or above the prime rate in order to continue operations at the time in question. In the alternative, Century Wrecker contends that at a minimum, prejudgment interest should be calculated at the prevailing prime rate during the infringing period since July 1987. Lastly, Century Wrecker asserts that prejudgment interest should be compounded.

Buske argues that prejudgment interest should not be imposed at all, considering Century Wrecker's delay in proceeding with its claim for damages due to infringement. Buske asserts that the '978 patent was issued on July 14, 1987, and the '737 patent was issued on June 6, 1989. However, Century Wrecker exchanged correspondence with Buske in 1988, 1989, 1991, and in April 1993, throughout which Buske continued to deny liability. Century Wrecker did not commence litigation regarding this patent infringement until June 25, 1993. Buske asserts this delay should warrant the court's denial of prejudgment interest, considering such interest would be based, in part, upon a time period when Century Wrecker was not pursuing its claim. In addition, Buske claims that prejudgment interest should be denied given the strong nature of Buske's claims of invalidity. In the event that the court determines an award of prejudgment interest is appropriate in this case, Buske argues the U.S. Treasury bill rate should be applied, offering figures both simple and compounded.

**1282** 

### a. Imposition of prejudgment interest

 As discussed above, prejudgment interest should be awarded to adequately compensate the claimant for the infringement of its patent and to ensure the plaintiff is placed in the same position as it would have been if the defendant had entered into a reasonable royalty agreement. *Devex,* 461 U.S. at 654–55, 103 S.Ct. at 2062; *King Instruments v. Perego,* 65 F.3d at 948; *Beatrice Foods,* 923 F.2d at 1580; *Bio–Rad Laboratories,* 807 F.2d at 964. Therefore, prejudgment interest should ordinarily be awarded, absent some justification for withholding such an award. *Devex,* 461 U.S. at 657, 103 S.Ct. at 2063; *Lummus Indus., Inc.,* 862 F.2d at 274; *Nickson Indus., Inc.,* 847 F.2d at 800.

 Century Wrecker waited six years to commence its lawsuit against Buske. Throughout the six years from the time the '978 patent was issued, Century Wrecker exchanged correspondence with Buske, each time threatening litigation against Buske for patent infringement. In a letter dated March 4, 1988, Century Wrecker's counsel requested that Buske cease all allegedly infringing activity, and stated, "Absent a reply within 15 days from the date of this letter as to your intended course of action in this matter, our client has authorized us to institute litigation to enforce its rights...." Defendant's Exhibit O, p. 1. Also, in letters dated October 26, 1988, and July 6, 1989, Century Wrecker reiterated its intent to "enforce its rights against all infringers ...," at the conclusion of its litigation against Challenger Wrecker Manufacturing, Inc. Defendant's Exhibit O, p. 11, 13. On April 22, 1991, Century Wrecker's counsel again wrote Buske about its intent to enforce its rights, claiming it had concluded other lawsuits with several other infringers. Defendant's Exhibit O, p. 21. In reply to each of these threats of litigation, Buske consistently maintained that it was not infringing, because it believed Century Wrecker's patents were invalid. Thus, Century Wrecker was aware through-

out this six-year time period that Buske would likely continue selling the infringing products because it believed it had a legal right to continue its conduct. The continued sales of the infringing devices up until the time the lawsuit was filed only increased the amount of the total sales, which apparently served as the royalty base for the jury's calculation of damages. Thus, although Century Wrecker argues that Buske was not prejudiced by Century Wrecker's delay in commencing this lawsuit, *see Lummus Indus.,* 862 F.2d at 275 (there must be prejudice to the defendant and no reasonable excuse for the delay to limit or deny interest because of undue delay); *Virginia Panel Corp.,* 887 F.Supp. at 886 (same), the court believes that Buske's exposure to a significantly larger award of damages because of Century Wrecker's delay amply meets the requirement of a showing of prejudice. Also, Century Wrecker has not offered any evidence or reasons justifying delay, except that they were pursuing other defendant infringers. However, Century Wrecker has made no showing why this other litigation prevented it from pursuing Buske. Thus, the court does not view this other litigation as grounds for imposing a higher rate of prejudgment interest. *See Kalman,* 914 F.2d at 1486. While the court concludes that Century Wrecker's undue delay in prosecution is not a sufficient justification for withholding prejudgment interest, the court is persuaded to apply a lesser amount of prejudgment interest than Century Wrecker's most optimistic calculation. Thus, the court deems that some amount of prejudgment interest is appropriate in this case, calculated from the date of infringement to the date of judgment.[14]

### b. Rate of prejudgment interest

 Now that the court has determined that an award of prejudgment interest is warranted in this case, the court must also decide the rate at which prejudgment interest should be calculated. The court has considered the proposed rates and calculations

---

**14.** Buske also asserts that prejudgment interest should be withheld given the strong nature of its claims of invalidity. The court is not persuaded this factor is significant in determining the ap-

propriateness of an award of prejudgment interest. However, the court will consider this factor in its determination of whether or not to award enhanced damages, attorney fees, and costs.

submitted by the parties and is mindful of the purpose of prejudgment interest, which is the full compensation of the patent owner for infringement of its products. *See Bio–Rad,* 807 F.2d at 969; *Endress & Hauser, Inc.,* 892 F.Supp. at 1132. Furthermore, the court is aware of its wide latitude in selecting interest rates and in determining whether interest should be simple or compounded. *See Rite–Hite,* 56 F.3d at 1555–56. Although Century Wrecker maintains it has borrowed money and paid back loan amounts at or above the prime rate in order to continue operations at the time in question, the court is not persuaded that Century Wrecker's corporate debt borrowing rate is required to fully compensate it for the infringement of its patents. Likewise, due to the undue delay of Century Wrecker in filing its lawsuit against Buske, the court does not believe the prime rate is the appropriate rate at which to calculate prejudgment interest. Rather, the court concludes the U.S. Treasury bill rate is the appropriate rate at which to calculate prejudgment interest. Although this rate is lower than both the prime rate and the corporate debt borrowing rate, this rate is reflective of the delay involved and the resulting prejudice Buske suffered. Therefore, the court finds that an award of prejudgment interest, compounded annually and calculated at the U.S. Treasury rate, is appropriate in this case.

Century Wrecker favored an award of prejudgment interest calculated at the corporate debt borrowing rate in the amount of $606,035.00, or an award of prejudgment interest calculated at the prime rate in the amount of $511,916.00. In its brief, Buske calculated the amount of prejudgment interest, compounded annually, at the U.S. Treasury rate, as $234,488.30. Although Century Wrecker has disputed the use of the U.S. Treasury rate, it has not disputed Buske's calculation. Because the court has determined the U.S. Treasury rate is the applicable rate at which prejudgment interest should be calculated, the court awards Century Wrecker prejudgment interest in the amount of $234,488.30.

#### c. Postjudgment interest

██ Whereas Century Wrecker has also argued for the imposition of postjudgment interest pursuant to 28 U.S.C. § 1961(a), Buske failed to address it. 28 U.S.C. § 1961(a) provides in pertinent part:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent . . . of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of judgment. . . .

28 U.S.C. § 1961(a). Furthermore, postjudgment interest shall be computed daily to the date of payment and shall be compounded annually. *See* 28 U.S.C. § 1961(b). Pursuant to these statutory provisions, the court concludes that an award of postjudgment interest is appropriate. Having resolved the issues of prejudgment and postjudgment interest, the court turns next to the question of whether this case warrants an award of enhanced damages in favor of Century Wrecker.

### C. Enhanced Damages

Century Wrecker has argued it is entitled to enhanced damages due to the jury's finding of willfulness of Buske's infringement of its patents by clear and convincing evidence, as well as the totality of circumstances implicating the culpability of Buske. On the other hand, Buske argues first that its conduct was not willful, and also that even if the court sustains the jury's finding of willfulness, the court should exercise its discretion in refusing to enhance damages. Buske maintains that the totality of the circumstances does not reflect a level of culpability that warrants the penalty of enhanced damages. To evaluate the merit of these claims, the court will first review the background of the applicable statute and case law governing this issue and then proceed to the analysis of the parties' arguments.

#### 1. Applicable law

██ In examining the statutory development of enhanced damages, the court notes that originally, in the Patent Act of 1793, an award of treble enhanced damages was man-

datory. Act of February 21, 1793, Ch. 11, Section 5, 1 Stat. 318. This mandatory imposition of treble damages remained in effect until the enactment of the Patent Act of 1873, whereby Congress gave the courts "discretion" to award enhanced damages, "not exceeding three times" the amount of damage sustained by the patent owner. Act of July 4, 1836, Ch. 357, Section 14, 5 Stat. 123. The United States Supreme Court has noted with approval the change from mandatory trebling of damages to an award of enhanced damages in an amount within the court's discretion. *See Seymour v. McCormick*, 57 U.S. (16 How.) 480, 14 L.Ed. 1024 (1853). This discretion is embodied in the current statutory provision, 35 U.S.C. § 284, which provides as follows:

[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

When the damages are not found by a jury, the court shall assess them. In either event *the court may increase the damages up to three times the amount found or assessed.*

The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

35 U.S.C. § 284 (emphasis added). Thus, since 1836, the decision whether or not to award enhanced damages in a patent infringement case has been and remains discretionary with the trial judge. *Amsted Indus. Inc.*, 24 F.3d at 183; *American Medical Sys., Inc. v. Medical Engineering Corp.*, 6 F.3d 1523, 1532 (Fed.Cir.1993); *Goodwall Constr. Co. v. Beers Constr. Co.*, 991 F.2d 751, 758 (Fed.Cir.1993) (citing *Acoustical Design, Inc. v. Control Elecs. Co.*, 932 F.2d 939, 942 (Fed.Cir.), *cert. denied*, 502 U.S. 863, 112 S.Ct. 185, 116 L.Ed.2d 146 (1991)); *In re Hayes*, 982 F.2d at 1545; *Brooktree Corp.*, 977 F.2d at 1581; *Read Corp.*, 970 F.2d at 826; *State Indus., Inc. v. Mor–Flo Indus., Inc.*, 948 F.2d 1573, 1576 (Fed.Cir.1991); *Modine Mfg. Co. v. Allen Group, Inc.*, 917

F.2d 538, 543 (Fed.Cir.1990); *Kloster Speedsteel AB*, 793 F.2d at 1580.

■ The decision to enhance damages is a two-step process. *Graco, Inc.*, 60 F.3d at 792 (citing *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 866 (Fed.Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986)); *Amsted Indus. Inc.*, 24 F.3d at 183; *Delta–X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 413 (Fed.Cir. 1993) (citing *Beatrice Foods*, 923 F.2d at 1578); *In re Hayes*, 982 F.2d at 1545; *State Indus., Inc.*, 948 F.2d at 1576 (whether willful infringement or another circumstance justifying enhanced damages is proven, the court must determine whether or not, under the totality of the circumstances, enhanced damages are warranted); *Jurgens v. McKasy*, 927 F.2d 1552, 1562 (Fed.Cir.1991) (district court must determine whether or not, under the totality of the circumstances, enhanced damages are warranted), *cert. denied*, 502 U.S. 902, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991); *Kloster Speedsteel AB*, 793 F.2d at 1580. First, the court must determine whether willful infringement was proven at trial. *Graco, Inc.*, 60 F.3d at 792 (citing *King Instrument Corp.*, 767 F.2d at 866); *Amsted Indus. Inc.*, 24 F.3d at 183; *Delta–X Corp.*, 984 F.2d at 413 (citing *Beatrice Foods*, 923 F.2d at 1578); *In re Hayes*, 982 F.2d at 1545; *State Indus., Inc.*, 948 F.2d at 1576; *Jurgens*, 927 F.2d at 1562; *Kloster Speedsteel AB*, 793 F.2d at 1580. Once a finding of willfulness or bad faith has been made, the trial judge has the discretion to enhance damages, up to three times the amount of actual damages awarded to the prevailing party. *Graco, Inc.*, 60 F.3d at 792 (citing *King Instrument Corp.*, 767 F.2d at 866); *Amsted Indus. Inc.*, 24 F.3d at 183; *Delta–X Corp.*, 984 F.2d at 413 (citing *Beatrice Foods*, 923 F.2d at 1578); *In re Hayes*, 982 F.2d at 1545; *State Indus., Inc.*, 948 F.2d at 1576; *Jurgens*, 927 F.2d at 1562; *Kloster Speedsteel AB*, 793 F.2d at 1580.

■ A finding of willful infringement, however, does not mandate that damages be enhanced, much less mandate treble damages. *Goodwall Constr. Co.*, 991 F.2d at 758 (citing *State Indus., Inc. v. Mor–Flo Indus., Inc.*, 948 F.2d 1573, 1576 (Fed.Cir.1991));

*Brooktree Corp.*, 977 F.2d at 1581; *Read Corp.*, 970 F.2d at 826 (citing *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed.Cir.1990), *cert. denied*, 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991)); *Modine Mfg. Co.*, 917 F.2d at 543. The infringer can often avoid enhanced damages by mounting a meritorious good-faith defense and a substantial challenge to infringement. *Delta–X Corp.*, 984 F.2d at 413 (citing *Paper–Converting Mach. Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 20 (Fed.Cir.1984)).

■■■■ The amount of the enhancement must bear some relationship to the level of culpability of the conduct. *Graco, Inc.*, 60 F.3d at 794 n. 4. A paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all facts and circumstances. *Read Corp.*, 970 F.2d at 826 (citing *Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1125–26) (Fed.Cir.1987). Furthermore, the court must consider factors that render the defendant's conduct "more culpable, as well as factors that are mitigating or ameliorating." *Read Corp.*, 970 F.2d at 826. Regardless, an award of enhanced damages is a penalty against the infringer for its increased culpability, not as a means to additionally compensate a plaintiff for an inadequate award of actual damages. *Beatrice Foods*, 923 F.2d at 1579.

■■■■ Prior circuit court decisions have recognized the prudence of this discretion, finding that the trial judge is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between the patent owner and the infringer. *Amsted Indus. Inc.*, 24 F.3d at 184 (citing *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*, 781 F.2d 198, 201 (Fed.Cir.1986)); *American Medical Sys., Inc.*, 6 F.3d at 1532 (citing *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1547–48 (Fed.Cir.1984)) (circuit court held it was apparent that the district court took into account mitigating factors because treble damages were not awarded; rather, the district court awarded damages 1.5 times the total amount of actual damages awarded); *Delta–X Corp.*, 984 F.2d at 414; *Virginia Panel Corp. v. Mac Panel Co.*, 887 F.Supp. 880, 885 (W.D.Va.1995) (a finding of willful patent infringement supported enhancement of damages by 10%, rather than an award of treble damages, where infringer had conducted patent searches and obtained legal opinions and had asserted affirmative defenses that were not frivolous or in bad faith). In awarding maximum enhancement of damages, the district court should consider one or more of the following factors:[15] (1) whether the infringer deliberately copied the patent; (2) whether the infringer knew of the patent and had a good-faith belief it was invalid; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition;[16] (5) closeness of the willfulness question;[17] (6) duration of the defendant's misconduct; (7) remedial action by the defendant;[18] (8) defendant's motiva-

---

15. The court previously mentioned these factors in Section II(A)(2)(a)(I), in conjunction with Buske's motion for judgment as a matter of law on the ground that there was no sufficient evidence in the record to support the jury's finding of willfulness. However, the court will revisit these factors in more detail in its analysis of whether an award of enhanced damages is warranted, particularly because cases listing these factors, namely, *Bott* and *Read Corp.*, articulated these factors for purposes of determining the propriety of an award of enhanced damages.

16. For other cases citing this factor as influencing an award of enhanced damages, see *St. Regis Paper Co. v. Winchester Carton Corp.*, 410 F.Supp. 1304, 1309 (D.Mass.1976); *Bott v. Four Star Corp.*, 229 U.S.P.Q. 241, 254, 1985 WL 6071 (E.D.Mich.1985), *vacated and remanded for clarification of damage amount*, 807 F.2d 1567 (Fed.

Cir.1986); *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 561 F.Supp. 512, 533 (E.D.La. 1981), *aff'd*, 761 F.2d 649 (Fed.Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985) (enhanced damages "should not unduly prejudice the defendants' non-infringing business").

17. Cases citing this factor as influencing an award of enhanced damages include the following: *Modine Mfg. Co.*, 917 F.2d at 543 (where willfulness was "sufficiently close on the evidence," district court committed no abuse of discretion to deny enhanced damages).

18. For additional support regarding this factor, see *Intra Corp. v. Hamar Laser Instruments, Inc.*, 662 F.Supp. 1420, 1439 (E.D.Mich.1987) (damages doubled, as opposed to trebled, because

tion for harm;[19] (9) whether defendant attempted to conceal its misconduct.[20] *Amsted Indus. Inc.*, 24 F.3d at 183; *Read Corp.*, 970 F.2d at 827 (citing *Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 (Fed.Cir.1986)); *see also Goodwall Constr. Co.*, 991 F.2d at 758 (awarding treble damages upheld where defendant willfully copied patented process and had attempted to conceal information from its patent attorney when seeking an infringement opinion); *In re Hayes*, 982 F.2d at 1543; *Brooktree Corp.*, 977 F.2d at 1581 (citing *Modine Mfg. Co.*, 917 F.2d at 543) (trial court may consider weight of evidence of willfulness, and thus may consider culpability of the infringer with close attention to any circumstances in mitigation, closeness of the willfulness question, and any other relevant factors);[21] *Modine Mfg. Co.*, 917 F.2d at 543 (denial of enhanced damages appropriate where the question of willfulness was sufficiently close on the evidence); *Oscar Mayer Foods Corp. v. Conagra, Inc.*, 869 F.Supp. 656, 667 (W.D.Wis.1994) (where infringers vigorously pursued an invalidity defense in good faith, both at trial and in the Patent and Trademark Office and pursued other legitimate defenses, court did not award enhanced damages, citing the public interest in legitimate challenges to validity of the patent monopoly), *aff'd*, 45 F.3d 443 (Fed.Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 62, 133 L.Ed.2d 25 (1995).

### 2. Century Wrecker's argument for enhanced damages

As noted above, in order to award enhanced damages, the court must first determine whether willful infringement has been proved. *See Graco, Inc.*, 60 F.3d at 792 (citing *King Instrument Corp.*, 767 F.2d at 866); *Amsted Indus. Inc.*, 24 F.3d at 183; *Delta–X Corp.*, 984 F.2d at 413 (citing *Beatrice Foods*, 923 F.2d at 1578); *In re Hayes*, 982 F.2d at 1545; *State Indus., Inc.*, 948 F.2d at 1576; *Jurgens*, 927 F.2d at 1562; *Kloster Speedsteel AB*, 793 F.2d at 1580. In Section II(A)(2)(a), the court found that there was sufficient evidence in the record to support the jury's finding of willfulness in conjunction with its denial of Buske's motion for judgment as a matter of law, or in the alternative, for new trial or alteration of judgment. Thus, the court has already determined that willful infringement was, in fact, proved at trial. Consequently, the court must proceed to the next step and determine whether this case, under the totality of the circumstances, warrants the court's imposition of enhanced damages. *See State Indus., Inc.*, 948 F.2d at 1576; *Jurgens*, 927 F.2d at 1562. To make this determination, the court will apply the factors articulated above to the circumstances surrounding this case.

#### a. Deliberate copying of Century Wrecker's product

The first factor pertains to the issue of whether Buske deliberately copied the L-arm and underlift of Century Wrecker's product.

infringer "voluntarily ceased manufacture and sale of infringing systems funding the pendency of this litigation...."), *aff'd without opinion*, 862 F.2d 320 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1021, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989).

**19.** Even where defendants' infringing acts are willful and with knowledge of the plaintiff's rights, plaintiff is not necessarily entitled to enhanced damages where defendant's motivation is not to do harm, but rather is a result of prevailing economic pressure in the form of customer dissatisfaction. *See American Safety Table Co. v. Schreiber & Goldberg*, 415 F.2d 373, 379 (2d Cir.1969), *cert. denied*, 396 U.S. 1038, 90 S.Ct. 683, 24 L.Ed.2d 682 (1970).

**20.** In support of this factor, *see Russell Box Co. v. Grant Paper Box Co.*, 203 F.2d 177, 183 (1st Cir.) (enhanced damages awarded where infringer

failed to preserve its records and failed to cooperate overall at trial), *cert. denied*, 346 U.S. 821, 74 S.Ct. 37, 98 L.Ed. 347 (1953).

**21.** In *Brooktree Corp.*, the circuit court of appeals found that the district court had not abused its discretion in declining enhanced damages, even where the infringer continued to produce and sell its infringing products after being notified of the issuance of the plaintiff's patents. *Brooktree Corp.*, 977 F.2d at 1581–82. The court of appeals noted that the district court correctly observed that although there was sufficient evidence of willfulness to sustain the jury verdict, "the evidence supporting the jury's finding was not as strong as it could have been, and is not the weight and strength that would support the imposition of enhanced damages." *Id.* (citing *Brooktree Corp. v. Advanced Micro Devices, Inc.* 757 F.Supp. 1088, 1097 (S.D.Cal.1990)).

Century Wrecker asserts that the striking similarity between the models themselves raises at least the inference, if not the presumption, that Buske made a "bolt-by-bolt" copy of Century Wrecker's product. Also, in an answer to a hypothetical posed by Century Wrecker's counsel, Buske's expert testified that circumstantial evidence indicated that copying had taken place.[22] Furthermore, Earl Buske admitted he had seen Century Wrecker's wheel lift before he developed Buske's BodyGuard. Earl Buske had access to Century Wrecker brochures. At the time Century Wrecker introduced its wheel lift, Earl Buske heard about the product from his distributors, and his reaction to this news was that "we had better get to work and follow suit." In addition, Chuck Buske testified that Buske was inspired by "market demand."

Buske counters these arguments concerning the copying of Century Wrecker's product by asserting that the final jury instructions provided that an absence of willfulness could be inferred if Buske tried to match Century Wrecker's product with a functionally competitive product, but did not set out to copy it. However, the jury did not find an absence of willfulness; rather, the jury found there was willful infringement of Century Wrecker's product. The testimony of Earl Buske, Chuck Buske, and Mr. Sturm, as well as the fact that the infringing product was developed over a short period of time, the lack of any formal or ongoing meaningful research and development by Buske, and the lack of records showing independent development of Buske's design, all support the conclusion that Buske deliberately copied Century Wrecker's product.

### b. Failure to investigate scope of patents

The next factor concerns whether Buske knew of the patent, investigated the scope of the patent, and had a good-faith belief it was invalid. An examination of this factor in the context of this case has been discussed in Section II(A)(2)(a) of this order. There, the court considered Buske's consultation with patent counsel and actions subsequent to any alleged consultation, as well as the impact of "the Zackovich story." Century Wrecker claims that if Buske received any legal opinions, these opinions were oral, and as such, are entitled to lesser weight than those which are written. *See Minnesota Mining & Mfg. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1580 & 1582 n. 13 (Fed.Cir. 1992) (oral opinion, which is also advice received from trial counsel, is entitled to lesser weight); *Studiengesellschaft Kohle m.b.H.,* 862 F.2d at 1578; *Underwater Devices,* 717 F.2d at 1390. Likewise, at trial, none of Buske's witnesses could recall the content of the legal opinions they purportedly received. However, in spite of these facts, the evidence also showed that Buske has consistently claimed that it was relying on the oral advice of counsel in forming a good-faith belief in the invalidity of Century Wrecker's patents. Buske's good-faith belief in its invalidity defense was further supported by the testimony of Michael Sturm, Buske's expert witness, in which Sturm opined that Century Wrecker's L-arm patent was invalid because of the Lister patent. Sturm's testimony, Buske's consistent claims of good-faith reliance on the oral opinions of counsel, and the existence of the Lister patent all indicate that there was sufficient evidence in the record to create a close question on whether Buske reasonably relied on the advice of counsel and that he had investigated the scope of the patent and formed a "good-faith" belief as to the patents' alleged invalidity.

Regarding "the Zackovich story," as discussed in Section II(A)(2)(a) of this opinion, the court is not persuaded that Buske's reliance on the Zackovich story was so misguided as to constitute a failure to investigate the

---

22. At the close of Century Wrecker's cross-examination of Mr. Sturm, Buske's expert witness, Century Wrecker's counsel asked:

 Q. Assume the evidence shows that before Defendants' structure was commercialized, Defendant had prior access to Century Wrecker's unit in the market place; had prior access to brochures; that when Defendants heard about this product said "we'd better follow suit"; and that the reason they built the device was because they were "inspired by the market place"—would that indicate circumstantial factors of copying?

 Mr. Sturm answered, "Yes." (See Century Wrecker's Brief in Support of Motion for Increased Damages, Costs, and Attorney Fees, p. 8.).

scope of Century Wrecker's patents or overwhelming evidence of willfulness. Century Wrecker itself relied on the Zackovich story and cited it in its pleadings in a lawsuit against Zackovich in federal court. Century Wrecker's alleged ease in dispelling Zackovich's story should not necessarily be interpreted as a failure of Buske's duty to investigate the scope of Century Wrecker's patents. In light of the court's prior discussion on the closeness of the questions on willfulness and invalidity, this factor does not weigh strongly in support of an award of enhanced damages.

### c. Buske's behavior as a party to litigation

Century Wrecker complains that Buske did not act as though it were a "good-faith infringer." Century Wrecker's Brief in Support of Motion for Enhanced Damages, p. 14. Specifically, Century Wrecker argues that Buske employed a "shot gun" approach to the defense of this lawsuit, asserting twenty affirmative defenses, only to allegedly concede all but two of them by the conclusion of the trial. Century Wrecker's Brief, p. 14. Although Buske did assert more affirmative defenses in its answer than were followed through with at the trial, it is not an entirely uncommon scenario for a defendant to articulate affirmative defenses in its answer that are ultimately not pursued at trial or to otherwise modify its trial strategy. Furthermore, Buske limited its liability defense at trial to the doctrines of anticipation and obviousness as supported by the Lister invention and by the expert opinions of Mr. Sturm, its expert witness. Thus, the court is not persuaded that Buske used a "shot gun" approach in an attempt to delay this lawsuit or otherwise engage in misconduct during litigation.

Century Wrecker also claims that Buske's motion to disqualify Century Wrecker's counsel was filed to cause delay, inconvenience, and expense to Century Wrecker, to impair the adversarial process, and to divert the litigation from attention to the merits of the case. However, this court, in denying Buske's motion to disqualify counsel, expressly stated that Buske did not delay the filing of the motion to disqualify counsel for tactical decisions. Therefore, the court is not convinced that the fact that such a motion was filed at a late date amounts to litigation misconduct sufficient to justify an award of enhanced damages. Although it is true that Earl Buske avoided meeting with Sonny Griffin and stated on one occasion, "Don't hassle me at these trade shows ...," this behavior alone is not necessarily indicative of misconduct as a party during litigation, or as Century Wrecker asserts, "avoid[ing] the day of atonement, at all costs." Century Wrecker's Brief, p. 16. Neither the statement concerning Earl Buske's desire not to be bothered by negotiations during the trade shows, the affirmative defenses, nor the motion to disqualify rise to the level of misconduct as a party in litigation that would warrant enhanced damages.

### d. Buske's size and financial condition

Century Wrecker maintains that Buske's size and financial condition does not mitigate against a finding of treble damages. Century Wrecker cites Defendants' Exhibit SSS as evidence that Buske can withstand such a penalty. Specifically, Century Wrecker notes that since 1987, Buske has sold $43 million worth of product, $32 million deriving from the sales of wreckers with underlifts and L-arms, underlifts and L-arms themselves, and parts and accessories sold for use with underlifts and L-arms. Mary Ann Buske testified that her family had taken out more than $2.5 million from the company in salary since 1987 and has also received interest payments. The jury based its calculation of damages on over $10.8 million of sales of underlifts and L-arms alone. Although Buske argues in its resistance brief that the jury's award of compensatory damage of a little over one million dollars alone presents a "very real threat to the survival of both [defendant] companies," based on the total sales of Buske's product and the salaries paid out to members of the family in particular, the court is persuaded that Buske's size and financial condition is substantial enough to withstand a penalty of some amount of enhanced damages.

### e. Closeness of the case

Century Wrecker argues that liability in this case was one-sided. As support for this conclusion, Century Wrecker points to this

court's summary judgment ruling on Buske's infringement of Century Wrecker's patents. Also, Century Wrecker indicates that Michael Sturm, Buske's expert witness, would not render an opinion on the validity of the '978 patent and that no evidence suggests that any of the prior art could be combined in such a manner as to make the '978 patent invalid. Century Wrecker dismisses Buske's argument regarding the Lister patent, stating that Buske's entire case on liability was founded upon the addition of one single British patent to more than fifty references cited by the United States Patent Office. While the court recognizes that the Lister patent is one foreign reference amidst many United States references, this fact does not automatically foreclose the question as to whether the Century Wrecker patent was invalid based on that reference. Buske's expert, Mr. Sturm, did, in fact, testify that it was his opinion that the L-arm patent was invalid based on the Lister patent, and that both patents were made obvious because of a combination of Lister with other prior art. Therefore, although this reference was one of many, it nonetheless gave Buske a foundation upon which to base its invalidity defense. While the jury rejected Buske's invalidity defense, this court's independent evaluation of the evidence on this question leads the court to the conclusion that it was a very close case on this issue. In addition, the court does not believe that its order granting summary judgment on the infringement issue automatically precluded the court from concluding at this time that this case was, in fact, a "close one" for purposes of evaluating the appropriateness of any sizeable enhanced damages award.

Furthermore, although the court denied Buske's motion for judgment as a matter of law, specifically noting there was sufficient evidence in the record to support the jury's finding of willfulness, this finding does not mean that the issue of willfulness itself is not a close question. Although one could argue a reasonable person would not have relied solely on the Zackovich story for its defense of validity, and although Century Wrecker did not have an affirmative duty to investigate the Zackovich story, Century Wrecker was, in fact, misled by the Zackovich story until

August 1994. Furthermore, Earl Buske did maintain throughout trial that he consistently received oral opinions from counsel regarding the scope of the patents and the validity of such patents. Although Earl Buske could not remember the content of the opinions, he nonetheless testified he did rely on advice from legal counsel and based his actions regarding Century Wrecker's patents on this advice. Also, Buske claimed its conduct was not willful in that it attempted to competitively match Century Wrecker's product, not copy its product. (See Final Jury Instruction No. 18.). The court considers Buske's claims to raise some close questions regarding willfulness and the reasonableness of its actions in response to legal advice regarding its invalidity defense. Therefore, the court concludes that this case is sufficiently close to mitigate against an award of enhanced damages.

### f. Duration of Buske's misconduct

Century Wrecker claims that Buske's activities continued unabated for more than ten years, noting that Buske was first notified of Century Wrecker's pending patent applications in 1983, and again in 1988, after issuance of the '978 patent and again within one month after issuance of the '737 patent. However, infringement could not exist until the issuance of the '978 patent on July 14, 1987. Although Buske did continue its activities from 1987 to the time of the verdict, it continued its operations and infringement in an alleged good-faith belief that the Century Wrecker patents were invalid and that it had not actually infringed the Century Wrecker product. The fact that a jury ultimately did not find Buske's defenses credible does not alter Buske's allegedly good-faith belief in its defenses up through the rendering of the verdict. Furthermore, although Buske continued its infringement up through the issuance of the verdict in this trial, Buske claims that after the verdict, it discontinued the manufacture, use, or sale of products which have now been found to infringe. Therefore, although Buske has been infringing Century Wrecker's product for eight years, as opposed to twelve years as claimed by Century Wrecker, the court does not find that the duration of Buske's infringement, particular-

ly considering Buske's defenses in its case, necessarily warrants the award of enhanced damages.

#### g. Remedial action taken by Buske

Century Wrecker argues that Buske took no action to remedy his infringement, namely, Buske continued its manufacture and sale of infringing systems up until the issuance of the verdict, despite a warning by its counsel and a summary judgment ruling by this court finding that Buske had infringed Century Wrecker's patents. In fact, Buske took no remedial action, such as voluntarily ceasing its manufacture and sale of Century Wrecker underlifts and L-arms. Rather, Buske relied on his alleged good-faith belief regarding nonliability and invalidity of the Century Wrecker patents. Although Buske may have had a belief in the correctness of its opinions on these issues, it nonetheless took no remedial action to stop its infringement of the Century Wrecker patents. Unlike several of the factors so far considered, Buske's failure to take remedial action weighs in favor of some enhancement of the damages awarded in this case.

#### h. Buske's motivation for harm

Regarding Buske's motivation for harm, Century Wrecker claims this factor should weigh in favor of enhanced damages because Buske's decision to infringe and continue infringing Century Wrecker's patents was based upon commercial reasons. Specifically, both Earl and Chuck Buske testified that they went to the L-arm and underlift system to meet customer demand and to effectively compete in the market. Buske does not deny its desire to compete in the market or to seek to earn a profit from the manufacture, use, and sale of its product. However, Century Wrecker has not cited any evidence other than Buske's response to customer de-

mand to indicate that Buske's motivation for harm was sufficiently severe to warrant a finding of enhanced damages.[23] Furthermore, although the circuit courts of appeal have been relatively quiet regarding the interpretation of this factor, the Federal Circuit has held that a plaintiff is not necessarily entitled to enhanced damages where the defendant's motivation is not to do harm, but rather is a result of prevailing economic pressure in the form of customer dissatisfaction. *See Read Corp.,* 970 F.2d at 827 (citing *American Safety Table Co. v. Schreiber & Goldberg,* 415 F.2d 373, 379 (2d Cir.1969), *cert. denied,* 396 U.S. 1038, 90 S.Ct. 683, 24 L.Ed.2d 682 (1970)). Thus, in light of the lack of evidence indicating Buske's motivation was to harm Century Wrecker, the court does not find that this factor weighs in favor of an award of enhanced damages.[24]

#### 3. Court's consideration of the totality of the circumstances

 Based on its analysis of the *Bott/Read Corp.* factors or the totality of the circumstances of this case, the court concludes that some factors do weigh in favor of an enhanced award in this case. Buske deliberately copied Century Wrecker's patents, Buske's size and financial condition are such that Buske can bear some enhancement of the damages, and the duration of its infringement for eight years after notice of Century Wrecker's patents is significant. However, the court concludes that after a consideration of all the *Read* factors, an award of treble damages is not warranted. Particularly, in consideration of Buske's behavior as a party to the litigation, the closeness of the case, and the lack of motivation for harm and lack of concealment of its conduct, an award of treble damages seems unduly harsh. The purpose of enhanced damages is to penalize

23. In addition, Century Wrecker cited *Central Soya Co. v. Geo. A. Hormel,* 581 F.Supp. 54 (W.D.Okla.1983), *aff'd,* 723 F.2d 1573 (Fed.Cir. 1983), for its proposition that Buske's motivation for harm was sufficiently severe to justify an award of enhanced damages. However, in that case, the district court noted that where a defendant continued its infringement, in part, due to customer demand, this response to customer demand was only one of fourteen factors which led to a finding of willfulness. *Id.* at 59. Thus, the

court does not find here that the discussion of an infringer's motivation for harm in *Central Soya* necessarily supports an award of enhanced damages in this case.

24. The ninth factor listed in *Read Corp.* pertains to the issue of whether Buske attempted to conceal its infringement. Century Wrecker has not alleged that Buske has concealed his conduct, and there is no evidence in the record indicating that any concealment took place.

the infringer for its increased culpability. *See Beatrice Foods,* 923 F.2d at 1579. Furthermore, the district court is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, and any other factors that pertain to a fair allocation of the burdens of litigation. *Amsted Indus., Inc.,* 24 F.3d at 184 (citing *S.C. Johnson & Son, Inc.,* 781 F.2d at 201); *American Medical Sys., Inc.,* 6 F.3d at 1532 (citing *Rosemount, Inc.,* 727 F.2d at 1547–48); *Delta–X Corp.,* 984 F.2d at 414. In addition, where willfulness is a close question, it is not an abuse of discretion to limit enhanced damages, or even deny them altogether. *See Modine Mfg. Co.,* 917 F.2d at 543; *Virginia Panel Corp.,* 887 F.Supp. at 885 (a finding of willful patent infringement supported enhancement of damages by 10%, rather than an award of treble damages, where infringer had conducted patent searches and obtained legal opinions and had asserted affirmative defenses that were not frivolous or in bad faith). Therefore, based on the reasons articulated above, the court concludes that an award of enhanced damages in the amount of one-third the damages awarded by the jury, or $362,819.00, is appropriate in this case.

 Wholly apart and independent from the factors traditionally considered by the courts in deciding whether or not to award enhanced damages, this court believes it is appropriate to consider the importance of the U.S. patent system, from its birth in Article I, § 8, cl. 8, of the Constitution, to this country's development. The fruits of patentees' labors touch every aspect of American life. Damages in patent cases must protect such beneficial entrepreneurs not only from economic damages, but from a stifling of the entrepreneurial spirit. *Cf.* U.S. CONST., art. I, § 8, cl. 8 (purpose of patent laws is "to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries"). This provision of the Constitution recognizes the importance of patent privileges and protections to fostering invention and entrepreneurship. Nearly three decades ago, in a concurring opinion offered, in part, to express these views, Judge Rich put the matter more bluntly:

> [t]his patenting process has little in common with the settlement of disputes between wrangling private parties and certainly its object is not to bring about peaceful repose in society. Its object is, on the contrary, to produce industrial and economic ferment and to goad inventors and entrepreneurs into activity through basic psychological appeals to self-interest. The public interest calls for the grant of patents on every invention patentable according to the tests laid down in the patent statutes.

*Application of Herr,* 377 F.2d 610, 615 (U.S.Ct. of Customs and Patent Appeals 1967) (Rich, J., concurring). Although I would be inclined to speak of the goal less in terms of appealing to self-interest and more in terms of rewarding beneficial invention and the efforts necessary to bring new inventions to the marketplace, particularly when they have been injured by infringement, enhanced damages, to my mind, could be uniquely effective in preventing the stifling effect of infringement on the spirit of invention. Because there should be some vindication of Century Wrecker's entrepreneurial energies that cannot be accounted for in the actual damages award in this case, the court finds some enhancement to the damages award appropriate for this further reason, at least where, as here, the court also finds the traditional factors would support such an enhancement.

Having determined the appropriateness and amount of enhanced damages to be awarded in this case, the court turns next to the issue of whether awards of attorney fees and costs are also warranted.

### D. Attorney Fees and Costs

Century Wrecker has also argued that it is entitled to attorney fees and litigation costs because this is an "exceptional" case as contemplated in 35 U.S.C. § 285. Buske maintains that there is insufficient evidence to justify a finding that this case is "exceptional," justifying an award of attorney fees or costs. The court is not without guidance for

its determination of whether or not this is an "exceptional case."

### 1. Applicable law

 Congress expressly provided that a district court could award attorney fees in patent infringement cases.[25] *See Devex*, 461 U.S. at 653, 103 S.Ct. at 2061 (citing 35 U.S.C. § 285). The determination of an award of attorney fees pursuant to 35 U.S.C. § 285 is actually a two-step inquiry: first, the trial court must determine whether the case is exceptional; and if it is, then it is within the court's discretion to award attorney fees to the prevailing party. *Interspiro USA, Inc. v. Figgie Internat'l Inc.*, 18 F.3d 927, 933 (Fed.Cir.1994); *Brooktree Corp.*, 977 F.2d at 1582 (statutory purpose of 35 U.S.C. § 285 is to reach cases where the interests of justice warrant fee shifting); *Modine Mfg. Co.*, 917 F.2d at 543; *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed.Cir.1989) (citing *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455 (Fed.Cir.1985)); *Bott v. Four Star Corp.*, 807 F.2d 1567, 1574 (Fed.Cir.1986); *S.C. Johnson & Son*, 781 F.2d at 200 (citing *Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 692 (Fed.Cir.1984)); *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 471 (Fed.Cir.1985). Thus, a trial court must make a finding of exceptional circumstances before an award of attorney fees can be granted. *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712–13 (Fed.Cir.1983). In "exceptional" cases, attorney fees also include costs and expenses. *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed.Cir.1983).

 However, even an exceptional case does not mandate the award of attorney fees in all circumstances. *See L.A. Gear, Inc.*, 988 F.2d at 1128. The Federal Circuit Court of Appeals has acknowledged that many factors could affect whether or not an award of attorney fees is warranted in a particular case, noting "[t]he trial judge is in the best position to weigh considerations such as the closeness of the case, tactics of counsel, the conduct of the parties and any other facts that may contribute to a fairer allocation of the burdens of litigation as between winner and loser." *L.A. Gear, Inc.*, 988 F.2d at 1128; *Brooktree Corp.*, 977 F.2d at 1582 (no exceptional circumstances where the case was a close one; the trial judge is in the best position to "observe the intangibles" within a patent infringement suit); *Modine Mfg. Co.*, 917 F.2d at 543.

 Types of conduct that might support a showing of exceptional circumstances include willful infringement, inequitable conduct before the Patent and Trademark Office, litigation misconduct, and vexatious or unjustified litigation or frivolous suit. *Beckman Instruments, Inc.*, 892 F.2d at 1551. The prevailing party who seeks an award of attorney fees has the burden of proving facts which establish the exceptional character of the case. *Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed.Cir. 1985). This conduct must be supported by clear and convincing evidence. *Beckman Instruments, Inc.*, 892 F.2d at 1551; *Machinery Corp. of America*, 774 F.2d at 471. Section 285 of Title 35 of the United States Code, the federal fee-shifting statute in the patent field, supports a party-neutral approach. *Fogerty v. Fantasy, Inc.*, —— U.S. ——, 114 S.Ct. 1023, 1028 n. 12, 127 L.Ed.2d 455 (1994). Thus, "courts have generally awarded attorney fees in an evenhanded manner based on the same criteria." *Id.*; *see also Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed.Cir.1990) ("[t]here is and should be no difference in the standards applicable to patentees and infringers who engage in bad faith litigation").

 The district court must explain why the case is not exceptional within the meaning of 35 U.S.C. § 285 if it does not award attorney fees in the face of a finding of willful infringement. *Modine Mfg. Co.*, 917 F.2d at 543; *see also Avia Group Internat'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1567 (Fed.Cir.1988) (even where there is willful infringement, such a case does not

**25.** 35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

necessarily constitute "exceptional circumstances"); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1329 (Fed. Cir.1987) (a finding of willfulness is legally sufficient to support an award of attorney fees); *Bott v. Four Star Corp.*, 807 F.2d 1567, 1574 (Fed.Cir.1986); *Shiley, Inc. v. Bentley Laboratories, Inc.*, 794 F.2d 1561, 1568 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1291, 94 L.Ed.2d 148 (1987); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed.Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985). The Federal Circuit Court of Appeals has noted that "[m]erely losing on the defenses of invalidity and non-infringement is not enough to make [the] case exceptional." *Kalman*, 914 F.2d at 1486 (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1238 (Fed.Cir.1985)) (no abuse of discretion to deny attorney fees where defendant's efforts in obtaining advice of counsel, as well as its good faith in challenging the patent); *State Indus., Inc.*, 751 F.2d at 1238. Moreover, attorney fees and costs are not to be assessed solely to penalize a party for defending or prosecuting a lawsuit. *Revlon, Inc. v. Carson Prods. Co.*, 803 F.2d 676, 679 (Fed.Cir.), *cert. denied*, 479 U.S. 1018, 107 S.Ct. 671, 93 L.Ed.2d 722 (1986). Rather, attorney fees and costs should be awarded to avoid "gross injustice." *See Revlon, Inc.*, 803 F.2d at 679; *Rohm & Haas Co.*, 736 F.2d at 688. With this background of the applicable law in mind, the court turns next to disposition of the parties' arguments concerning this issue.

### 2. Entitlement to attorney fees and costs

Willfulness is only one factor, albeit a sufficient one, for the court to examine in determining whether an award of attorney fees or costs is warranted. *Revlon, Inc.*, 803 F.2d at 679. Likewise, merely the fact that Buske lost on the issue of liability and on his defense of invalidity does not suffice to make this case "exceptional" for purposes of assessing attorney fees and costs. *See Kalman*, 914 F.2d at 1486 (citing *State Indus., Inc.*, 751 F.2d at 1238). For the same reasons that mitigated against Century Wrecker receiving treble damages, namely, Buske's

behavior as a party to this litigation, the closeness of the case, and the lack of motivation for harm, this case does not present the "exceptional" circumstances required by 35 U.S.C. § 285 for an award of attorney fees and costs. While the jury did find willful infringement, the court's view is that willfulness is a close question. On the other hand, Buske presented a substantial invalidity defense through expert testimony and evidence regarding the Lister patent and the obviousness of the Century Wrecker patents. Buske did not engage in any litigation misconduct or other misconduct. Buske discontinued manufacture and sale of the infringed products after a jury verdict ruled against it on the issue of liability and on its defense of invalidity. It was because of its belief in its defense of invalidity that Buske continued manufacture and sell the infringed products for as long as it did after Century Wrecker first objected to Buske's conduct. Attorney fees and costs should not be assessed solely to penalize a party for defending a lawsuit, and should be awarded to avoid "gross injustice." *See Revlon, Inc.*, 803 F.2d at 679. Here, it would be an unjust hardship to saddle Buske with attorney fees and costs, considering its vigorous defense against Century Wrecker's claims of infringement. Any assessment against Buske would only serve to penalize Buske, and no "gross injustice" has occurred within the context of this litigation to warrant such a penalty. For these reasons, Century Wrecker has not shown by clear and convincing evidence that this case presents "exceptional circumstances," justifying an award of attorney fees and costs. Thus, Century Wrecker's motion for attorney fees and costs is denied.

### E. Permanent Injunction In Accordance With Verdict

Century Wrecker has requested a permanent injunction prohibiting the defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the court order by personal service or otherwise, from further infringement of the infringed claims of the '737 and '978 patents and has asked the

court to enjoin specific models of defendants' products, although such specification is not intended to limit the scope of products enjoined. Thus, the court is specifically asked to further enjoin manufacture, use, and/or sale of the defendants' models BodyGuard, MD–730, MD–1030, MD–1280, and LD–5000. Century Wrecker has prepared an order, which it attached to its motion for entry of injunction, which reflects its proposed permanent injunction. Although Buske has filed a resistance to Century Wrecker's motion for entry of judgment, including prejudgment interest, and for entry of injunction, Buske did not articulate any argument against the entry of injunction. Rather, Buske only argued against the imposition of prejudgment interest.

 Pursuant to 35 U.S.C. § 283, the court may grant an injunction "to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. This type of injunction would be binding upon the parties as well as "their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the court order by personal service or otherwise." *See Fed. R.Civ.P.* 65(d); *see also Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 986 F.2d 476, 479 (Fed.Cir.1993) (injunctions pursuant to 35 U.S.C. § 283 must comply with the civil rule of procedure governing injunctions, *Fed.R.Civ.P.* 65). When a patent owner prevails on the merits, it is the general rule that an injunction will issue when infringement has been found, "absent a sound reason for denying it." *Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1247 (Fed.Cir. 1989), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989); *W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1281–83 (Fed.Cir.1988) (fact that infringer stopped infringing is generally not a reason to deny an injunction against future infringement unless there is persuasive evidence that further infringement will not take place; discontinuation of making or selling the infringed product is not a sufficient reason for denying injunction); *Spindelfabrik Suessen–Schurr v. Schubert & Salzer,* 829 F.2d 1075, 1076 (Fed.Cir.1987), *inj. broadened,* 903 F.2d

1568 (Fed.Cir.1990); *Shiley, Inc.,* 794 F.2d at 1567–68. While the right to exclude is an integral concept in property law, the district court nonetheless has broad discretionary powers under the patent statute to determine whether the facts of the case warrant the entry of an injunction and to determine the scope of such an injunction. *Joy Technologies, Inc. v. Flakt, Inc.,* 6 F.3d 770, 772 (Fed.Cir.1993); *Richardson,* 868 F.2d at 1247 (it is contrary to property law to deny the patentee's right to exclude others from use of his property); *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1548 (Fed.Cir.1987); *Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1564 (Fed.Cir. 1984) (exercise of discretion cannot be arbitrary). An injunction is proper only to the extent that it is granted to prevent violation of any right secured by patent and may not be punitive. *Joy Technologies, Inc.,* 6 F.3d at 772–73.

 In *Smith Internat'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573 (Fed.Cir.1983), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983), *judgment vacated on other grounds,* 839 F.2d 663 (Fed.Cir.1988), the court held that irreparable harm is presumed once the validity and infringement of the patent is established. Thus, Century Wrecker argues it is imperative that the injunction prohibiting further infringement be entered as soon as possible. Because Century Wrecker anticipates Buske exhibiting the infringing units at trade shows in the near future, it is requesting immediate injunctive relief.

Based upon the general rule regarding the entry of injunctions in patent infringement cases, the imperative nature of such an injunction in this particular case, and the fact that Buske has made no argument objecting to the entry of a permanent injunction, the court grants Century Wrecker's motion for entry of permanent injunction, ordering as follows:

Defendants E.R. Buske Manufacturing Co., Inc., E.R. Buske Distributing Co. and E.R. Buske, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with

them who receive actual notice of this Order by personal service or otherwise, are permanently enjoined and restrained during the life of the '737 and '978 patents from infringing in any way any of claims 1, 2, 3 and 8 of the '978 patent and claims 1–3, 5–8 and 10–14 of the '737 patent by manufacture, use and/or sale of products embodying the elements of those claims, or colorable variations thereof.

## III. CONCLUSION

After consideration of all the post-trial motions raised by both parties, the court reaches the following conclusions. First, regarding Buske's motion for judgment as a matter of law, or in the alternative, for new trial or alteration of judgment, the court concludes that the evidence does not point one way, Buske's way, on any issue, such that judgment as a matter of law in Buske's favor is proper. Nor does the court find that the jury's verdict on the issues of willfulness or inducement was against the great weight of the evidence, such that a new trial is in order. Thus, the court denies Buske's alternative motion for judgment as a matter of law, new trial, or alteration of judgment.

Regarding Century Wrecker's motion for entry of judgment, including prejudgment interest, the court grants the motion entering judgment in this case. Also, the court concludes an award of prejudgment interest, compounded annually, at the U.S. Treasury bill rate in the amount of $234,488.30 is appropriate, considering the undue delay of Century Wrecker in prolonging the commencement of litigation against Buske. Independent of the undue delay of Century Wrecker, the court finds that an amount of prejudgment interest calculated at this rate complies with the purpose of prejudgment interest—to compensate the plaintiff. The court also grants Century Wrecker's motion for the imposition of postjudgment interest at the rate provided in 28 U.S.C. § 1961(a).

Because the court concludes that the *Read Corp.* factors reveal this case to be a close decision on the issue of willfulness and because the court also finds there was sufficient evidence in the record that Buske did not fail his affirmative duty to investigate the scope of Century Wrecker's patents due to its good-faith belief in the invalidity of Century Wrecker's patents, the court will not award treble enhanced damages. Rather, based on the totality of the circumstances, the court will limit the award of enhanced damages to one third of the actual damages award or $362,819.00. Furthermore, because the court finds this case did not pose "exceptional circumstances," Century Wrecker is not entitled to attorney fees and costs.

The court further grants Century Wrecker's motion for entry of permanent injunction, prohibiting Buske from further infringement of the '737 and '978 patents.

**IT IS SO ORDERED.**